[No. B078927. Second Dist., Div. Four. Aug. 3, 1994.]

ANGELES ELECTRIC COMPANY, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
STEVEN M. SPECTOR, Real Party in Interest.

## COUNSEL

Hunt, Ortmann, Blasco, Palffy & Rossell, Dale A. Ortmann and Paula Gerber for Petitioner.

No appearance for Respondent.

McDermott, Will & Emery, Kristine Blackwood and Stuart W. Price for Real Party in Interest.

## OPINION

**EPSTEIN, Acting P. J.**—A subcontractor on a construction project received payment for an antecedent debt from a general contractor. As a result, the subcontractor released its mechanic's lien against the project owner's property. The general contractor then made an assignment for benefit of creditors. In this case of first impression in California, we hold that release of the

mechanic's lien did not constitute "new value" to the general contractor under the contemporaneous exchange exception to the rule allowing an assignee for benefit of creditors to recover preferential payments.

### FACTUAL AND PROCEDURAL SUMMARY

The essential facts in the case are not disputed, and may be simply stated. Petitioner, Angeles Electric Company (Angeles) is the defendant in an action commenced by Steven M. Spector, the real party in interest in this proceeding. Spector is the assignee for benefit of creditors of Buckley Construction Corporation (Buckley). Buckley is a general contractor, and Angeles is one of its subcontractors. Within 90 days before the assignment, Buckley paid $55,585.57 to Angeles for materials Angeles had furnished to the construction project. Angeles furnished Buckley with a mechanic's lien release recognizing the amount paid. Buckley then made an assignment for benefit of creditors to Spector, who promptly instituted this action to set aside the payment to Angeles as an avoidable preference. Angeles answered Spector's complaint and, in an affirmative defense, asserted that the transfer was made for new value, and hence was not subject to avoidance by the assignee.

The issue was joined by Spector's motion for summary adjudication of the new value defense. The trial judge concluded that release of the mechanic's lien against the owner's property, in exchange for payment for materials previously furnished to the project for which compensation was due and unpaid, did not constitute a contemporaneous exchange for new value, as required by the preference exemption. (Code Civ. Proc., § 1800, subd. (c)(1)(A).)[1] Angeles sought review by prerogative writ. We agreed to review the issue, granted an alternative writ, and stayed proceedings. We now conclude that the trial court reached the correct result. The alternative writ having served its purpose, we shall discharge it and dissolve the stay, allowing the summary adjudication to stand.[2]

---

[1] All further code citations are to the Code of Civil Procedure unless otherwise indicated.

[2] The assignor also demurred to the writ petition, arguing Angeles had lost the right to contend the statute is unconstitutional because it had not raised that issue in the trial court. We regard the constitutional argument to be principally directed to Angeles' position on how the recovery of preference statute should be construed. To the extent it goes beyond that, we believe it raises an important constitutional question that may be reviewed in this proceeding, even though not raised in the trial court. (See *Hale* v. *Morgan* (1978) 22 Cal.3d 388, 394 [149 Cal.Rptr. 375, 584 P.2d 512].) We overrule the demurrer.

## DISCUSSION

### I

In 1979 the California Legislature, acting on the recommendation of the Law Revision Commission,[3] enacted a new statutory scheme for recovery of avoidable preferences by an assignee for the benefit of creditors. The new statute, section 1800, was, and is, almost identical to the analogous provision of the federal bankruptcy law, 11 United States Code section 547. Three of its provisions are determinative of Angeles's position in this case.

The first is subdivision (b) of section 1800, empowering assignees for benefit of creditors to recover preference payments: "Except as provided in subdivision (c), the assignee of any general assignment for the benefit of creditors (as defined in Section 493.010) may recover any transfer of property of the assignor: [¶] (1) To or for the benefit of a creditor; [¶] (2) For or on account of an antecedent debt owed by the assignor before the transfer was made; [¶] (3) Made while the assignor was insolvent; [¶] (4) Made on or within 90 days before the date of the making of the assignment or made between 90 days and one year before the date of making the assignment if the creditor, at the time of the transfer, was an insider and had reasonable cause to believe the debtor was insolvent at the time of the transfer; and [¶] (5) That enables the creditor to receive more than another creditor of the same class." (§ 1800, subd. (b).)[4]

Subdivision (c) of section 1800 sets out six exceptions (prohibitions) to the authority of the assignee to recover a preference. Of these, four (the first, third, fourth and fifth) require "new value." That term is defined in subdivision (a)(5): "The term 'new value' means money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to the transferee in a transaction that is neither void nor voidable by the assignor or the assignee under any applicable law, but does not include an obligation substituted for an existing obligation." (§ 1800, subd. (a)(5).)

The pertinent exception in this case is in subdivision (c)(1), which.prohibits the assignee from recovering a preference transfer: "(1) To the extent the transfer was: [¶] (A) Intended by the assignor and the creditor to or for whose benefit the transfer was made to be a contemporaneous exchange for new value given to the assignor; and [¶] (B) In fact a substantially contemporaneous exchange; . . ." (§ 1800, subd. (c)(1).)

---

[3]Recommendations Relating to Assignments for the Benefit of Creditors (Dec. 1980) 15 California Law Revision Commission Report (1980) pages 1121, 1128.

[4]The statute was amended in 1982 and 1992. The changes are not material to our discussion and, for ease of reference, we set out the present version of the law.

Besides the near identity of language between the state and federal statutes, there is a further and definitive indication of the Legislature's intention that the California statute be construed to conform with its federal counterpart. The California law was enacted as an urgency measure, to be effective before the end of the year in which it was approved. The Constitution requires that the Legislature state facts necessitating the earlier effective date. (Cal. Const., art. IV, § 8, subd. (d).) Explaining why it was necessary in this case, the Legislature stated: "The Bankruptcy Reform Act of 1978 (P.L. No. 95-598) becomes operative on October 1, 1979. The new bankruptcy law totally revises the manner of dealing with priorities, exemptions, and the recovery of preferences in a proceeding under that act. This act makes conforming revisions in the law relating to assignments for the benefit of creditors. It is therefore necessary that this act take immediate effect so that it may become operative on October 1, 1979." (Stats. 1979, ch. 394, § 8, p. 1470.)

Because the California statute is patterned after the federal provision, and recognizing the scarcity of decisional law construing our statute, we look to the construction of the bankruptcy provision by federal courts. (See *Union Oil Associates* v. *Johnson* (1935) 2 Cal.2d 727, 735 [43 P.2d 291, 98 A.L.R. 1499]; *In re Tracy L.* (1992) 10 Cal.App.4th 1454, 1464 [13 Cal.Rptr.2d 593].) At that level there is a plethora of authority.

## II

The preference provision of the federal statute, 11 United States Code section 547(b), provides: "Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property— [¶] (1) to or for the benefit of a creditor; [¶] (2) for or on account of an antecedent debt owed by the debtor before such transfer was made; [¶] (3) made while the debtor was insolvent; [¶] (4) made— [¶] (A) on or within 90 days before the date of the filing of the petition; or [¶] (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and [¶] (5) that enables such creditor to receive more than such creditor would receive if— [¶] (A) the case were a case under chapter 7 of this title; [¶] (B) the transfer had not been made; and [¶] (C) such creditor received payment of such debt to the extent provided by the provisions of this title."

The next subdivision sets out seven exceptions to the power of a bankruptcy trustee to set aside a preference. The first six of these are parallel to the state provision,[5] and four of them require "new value."

The federal definition of new value states: "In this section . . . [¶] 'new value' means money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation; . . ." (11 U.S.C. § 547(a)(2).)

The pertinent exemption, subdivision (c)(1), provides: "The trustee may not avoid under this section a transfer— [¶] (1) to the extent that such transfer was— [¶] (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and [¶] (B) in fact a substantially contemporaneous exchange; . . ." (11 U.S.C. § 547(c)(1).) "To come within the parameters of § 547(c)(1), three requirements must be satisfied: '(1) the creditor must extend new value to the debtor; (2) both the creditor and the debtor must intend the new value and reciprocal transfer to be contemporaneous; and (3) the exchange must in fact be contemporaneous.' " (*In re Bownic Insulation Contractors, Inc.* (Bankr. S.D.Ohio 1991) 134 Bankr. 261, 264 [*Bownic*], quoting *Cimmaron Oil Co., Inc.* v. *Cameron Consultants, Inc.* (N.D.Tex. 1987) 71 Bankr. 1005, 1008.)

III

There is no doubt but that the payment by Buckley to Angeles was a preference within the state and federal provisions. Angeles does not argue to the contrary. Instead, Angeles claims that the transfer is exempt from the recovery power of the assignee.

Angeles's argument may be summarized in the following terms: it supplied materials to the general contractor, Buckley, which Buckley used on the project it was building; that usage gave Angeles a mechanic's lien (Civ. Code, § 3082 et seq.) on the property where the improvements were being made, enforceable against the property owner; in exchange for payment from Buckley for materials it had supplied to the project, Angeles surrendered its

---

[5]The seventh provides a limited exemption for property acquired through consumer debts. While the California statute does not copy that provision, former section 690.60, enacted as part of the same chapter, provided for personal exemptions for the assignor. (Stats. 1979, ch. 394, § 1, p. 1463; see now § 1801.)

lien rights; its doing so resulted in new value to Buckley under the contemporaneous exchange exception. Because it did, Angeles argues, the trial court erred in granting Spector's motion for summary adjudication against Angeles' affirmative defense in which it pleaded the exemption.

In order to understand this argument, we must examine it in terms of the purpose and construction of the federal provision governing preferences and exemptions in bankruptcy.

As the urgency clause in the California statute suggests, the Bankruptcy Reform Act of 1978 totally revised the federal system for handling preferences and exemptions in bankruptcy. (See Countryman, *The Concept of a Voidable Preference in Bankruptcy* (1985) 38 Vand. L.Rev. 713 [Countryman].) The new value provision did not appear in the former statute. Its statutory history is sparse, but not nonexistent. Both Senate and House committee reports on the legislative vehicles through which the statute was enacted reported that the term should be defined in its "ordinary sense" and was intended to "avoid any confusion or uncertainty." (Sen. Rep. No. 95-989, 2d Sess., p. 87 (1978) [1978 U.S. Code Cong. & Admin. News, p. 5873]; H.R. Rep. No. 95-959, 2d Sess., p. 372 (1978) [1978 U.S. Code Cong. & Admin. News, p. 6328]; see *In re Energy Co-Op. Inc.* (7th Cir. 1987) 832 F.2d 997, 1003 [*SOCAP*].) Significantly, the term was defined in terms of what it "means" not what it "includes." In this way, Congress "created an exclusive, rather than open-ended, definition for new value." (*Id.* at p. 1003.)

In bankruptcy practice, the trustee has the burden of proving that a particular transfer by the bankrupt was a preference. If that burden is sustained, the transferee bears the burden of establishing that it is exempt from the avoidance provision. (*In re Grove Peacock Plaza, Ltd.* (Bankr. S.D. Fla. 1992) 142 Bankr. 506, 510; *In re Chase & Sanborn Corp.* (11th Cir. 1990) 904 F.2d 588, 595, fn. 15 [*Chase & Sanborn*].)

As summarized by the Fifth Circuit in a recent case, "[t]he preference section serves two congressional goals. First, by bringing back into the debtor's estate certain transfers made shortly before the filing of the bankruptcy petition, it creates a disincentive for creditors to attack a financially unstable debtor. Second, it promotes equity among unsecured creditors by forcing these creditors to share the debtor's unencumbered assets on a pro rata basis." (*Matter of Fuel Oil Supply & Terminaling, Inc.* (5th Cir. 1988) 837 F.2d 224, 227 [*Fuel Oil*].) A contemporaneous decision stated the principal policy objectives of the preference law in these terms: "The first objective is to encourage creditors to continue extending credit to financially

troubled entities while discouraging a panic-stricken race to the courthouse. . . . Another related objective of this section is to promote equality of treatment among creditors." (*In re Jet Florida System, Inc.* (11th Cir. 1988) 841 F.2d 1082, 1083 [*Jet Florida*].)

These purposes inform the objective of the exemption provisions requiring new value: unsecured creditors are not harmed by a prepetition transfer from the debtor's estate if the estate is replenished by an infusion that is at least roughly of equal value. "In such a situation, the creditor pool would not be harmed to the extent of the offset and the fundamental goal of equality of distribution would be preserved." (*Jet Florida, supra,* 841 F.2d at p. 1084; Levin, *An Introduction to The Trustee's Avoiding Powers* (1979) 53 Am. Bankr. L.J. 173, 187.) Thus, release of security on the debtor's property by the creditor who is paid by the debtor may constitute new value. (*In re George Rodman, Inc.* (10th Cir. 1986) 792 F.2d 125, 127.) That outcome is consistent with the preference law "because the release of the debtor's collateral offsets the transfer to the creditor, thereby resulting in no depletion to the debtor's estate." (*Fuel Oil, supra,* 837 F.2d at p. 228; see also *Countryman, supra,* 38 Vand. L.Rev. at pp. 759-767; 4 Collier on Bankruptcy (15th ed. 1994) par. 547.09, p. 547-44.) The contemporaneous transfer provision "is premised, inter alia, on the presumption that receipt of new value offsets the transfer and the estate is not depleted or diminished to the detriment of other creditors." (*In re Hatfield Electric Co.* (Bankr. N.D.Ohio 1988) 91 Bankr. 782, 784 [*Hatfield*].)[6]

We have observed that by using the definitional term "means," rather than the descriptive term "includes," in the new value subdivisions, Congress intended an exclusive provision. The implication is that courts are not free to engraft expansive meanings or applications to the term. (*SOCAP, supra,* 832 F.2d at p. 1003 ["[w]e refuse to stretch § 547(a)(2)'s language beyond Congress' clear intent"]; *Hatfield, supra,* 91 Bankr. at p. 784.) It also is significant that new value is not a synonym for consideration. Any benefit to the promisee or detriment to the promisor may constitute consideration. Certainly the express or constructive release by a creditor of its lien rights against the property of a third person (e.g., the landowner on whose property construction is being performed), if bargained for, will suffice as consideration to support a binding contract. But new value is a more limited concept; it requires the infusion of value into the estate of the debtor. (See *Hatfield, supra,* 91 Bankr. at p. 785 [release of right of subrogation against property of third party is "actual value" to the debtor, but not "new value"]; *Bownic, supra,* 134 Bankr. at p. 265 [similar].)

---

[6]See *Countryman, supra,* 38 Vand. L.Rev. at page 766, in which the author suggests the new value provision may be an attempt to codify the substitution of collateral value doctrine.

A fuller understanding of what is, and what is not, new value in the context of the contemporaneous transfer provision may be gained from a review of a number of the reported decisions.

In *Hatfield*, the court was presented with a fact situation essentially identical to the present case. A supplier had furnished materials to a construction project, and forbore enforcing its mechanic's lien rights against the owner. The materials were furnished pursuant to a contract with the general contractor. The supplier received a prepetition payment from the general contractor. The general contractor went into bankruptcy within 90 days of the payment, and the trustee of its estate sought to avoid the payment as a preference. The supplier argued that the contemporaneous exchange exception applied because its forbearance from enforcing mechanic's lien rights against the property owner constituted new value to the general contractor. The court rejected the claim, holding that the forbearance brought no infusion of value to the debtor's estate, a requisite to the new value requirement. (91 Bankr. at p. 785.)

The bankruptcy court in *Bownic* reached the same result under similar facts. In that case, a sub-subcontractor creditor provided labor and materials on a construction job. Its subcontractor, the debtor, went into bankruptcy, and the trustee sought to set aside a payment the creditor had received during the preference period. The creditor argued that it had held lien or bond claims which it could have pursued if it had not been paid, and that its surrender or forbearance of the right to do so amounted to new value to the debtor's estate. The creditor pointed out that had it exercised these rights, the owner or surety would have been subrogated against the debtor. From that fact, it concluded that the debtor's estate had received new value because it was relieved of the contingency of being faced with subrogated claims. The court rejected the argument. It held no new value was received by the debtor. "A claim in subrogation is only an unsecured claim, and release of an unsecured claim does not benefit the debtor's estate." (*Bownic, supra*, 134 Bankr. at p. 266.)

While these cases hold that surrender of secured rights against a third person, such as the release of a mechanic's lien against the owner's property in a construction case or the release of an inchoate right of subrogation against the debtor, do not result in new value to the debtor's estate, the release of a security interest against the debtor's property does constitute new value. (*In re Pitman* (6th Cir. 1988) 843 F.2d 235; and see *Greenblatt* v. *Utley* (9th Cir. 1956) 240 F.2d 243.) The reason is that the release of collateral in the debtor's estate results in an infusion of assets to that estate, available to creditors in the event a bankruptcy occurs within the preference period.

The same is true when a third party releases a security interest in the debtor's estate. In *Fuel Oil*, a supplier of petroleum was secured by letters of credit issued by the debtor's bank. The bank, in turn, was protected by a security interest in the debtor's property. As the creditor was paid by the debtor, the bank released a corresponding portion of the security it held against the debtor's property. This was held to be new value under section 1800 subdivision (c)(1) because it freed assets to the debtor. (837 F.2d 229; see also *Jackson* v. *Flohr* (9th Cir. 1955) 227 F.2d 607 [tripartite arrangement by which owner of construction project made payments directly to contractor's creditor by checks issued jointly to creditor and subcontractor; no preferential payment]; *Keenan Pipe & Supply Company* v. *Shields* (9th Cir. 1956) 241 F.2d 486 [similar]; *In re Flooring Concepts, Inc.* (Bankr. 9th Cir. 1984) 37 Bankr. 957 [similar]; *Chase & Sanborn, supra,* 904 F.2d at p. 595 [debtor's prepetition payments to creditor, partially reducing debtor's guarantee obligation, did not result in new value to debtor's estate]; *SOCAP, supra,* 832 F.2d 1003 [continued "credibility and goodwill" with creditor and in petroleum marketplace did not constitute new value to debtor in exchange for preference payment]; *Matter of Installation Services, Inc.* (Bankr.N.D. Ala. 1989) 101 Bankr. 282 [forbearance in collection of debt not new value]; and see cases collected in 4 Collier on Bankruptcy, *supra,* par. 547.09, p. 547-44, fn. 1; and Annot., "New Value"—11 U.S.C.S. § 547 (1993) 111 A.L.R.Fed. 409, 464-469.)

 The instruction of these cases is clear: a materialman's surrender of mechanic's lien rights against a third party's property on account of money paid by a contractor does not result in new value to the contractor. The reason is that while loss of the lien is a detriment to the creditor, it does not enrich the estate of the debtor; it adds nothing to assets available to unsecured creditors in the event of a bankruptcy during the preference period.

That is our case. Angeles urges that the contractor, Buckley, realized a benefit because, if Buckley had not paid, Angeles would have pursued its rights against the owner. That would have resulted in the owner paying Buckley's obligation to Angeles, or in a foreclosure of the owner's property. In either case, the owner would have been subrogated to Angeles's rights and would have proceeded against Buckley. The net effect, it is argued, is that Buckley would have been liable for the owner's direct loss, as well as costs incurred in the collection process. This argument has been rejected by numerous federal decisions, as we have discussed. Beyond that, it proves too much. If Angeles were correct, any payment by a debtor to a creditor would result in new value to the debtor because of the pro tanto reduction of its liability and avoidance of additional expenses necessitated by the collection proceeding. "If 'new value' included credit toward such debts, thus rendering such transfers categorically nonavoidable, section 547 would be rendered a tautological nullity." (*Chase & Sanborn, supra,* 904 F.2d at p. 596.)

The cases we have cited represent what is clearly the prevailing view among the federal decisions. But it is not a unanimous view; there is a split of authority.[7] Angeles asks us to reject the majority position in favor of the few cases that have found a contemporaneous exchange resulting in new value in the situation presented. In support of its position it cites *Keenan Pipe & Supply Company* v. *Shields, supra,* 241 F.2d 486; *In re Flooring Concepts, supra,* 37 Bankr. 957; *Matter of Anderson Plumbing Co.* (Bankr. E.D.Cal. 1986) 71 Bankr. 19, *(Anderson Plumbing)*; and *In re E. R. Fegert, Inc.* (Bankr. 9th Cir. 1988) 88 Bankr. 258 *(E. R. Fegert).*[8] We have examined these cases, and we are not persuaded.

In *Keenan Pipe,* a subcontractor arranged to have its debt to a supplier satisfied by payments from the general contractor directly to the supplier. This was accomplished by joint checks issued to the subcontractor and the supplier, and endorsed from the former to the latter. When the subcontractor became bankrupt, the trustee of its estate sought to have the payments set aside as avoidable preferences under the bankruptcy statute then in effect. The court held that there had been no avoidable preference. (241 F.2d at pp. 489-491.)

The case is distinguishable on several grounds. First, it was decided under the former law, before enactment of the "new value" provisions. Second, the court took the view that the general contractor had dedicated a specific sum to pay the supplier and that the dedicated funds could not be reached by anyone else. (See *Matter of Nami Bros., Inc.* (Bankr. D.N.J. 1986) 63 Bankr. 160, 161, distinguishing *Keenan Pipe* on a trust fund theory based on the dedication of funds.) Stated somewhat differently, the court held that the money used by the general contractor to pay the subcontractor never became part of the debtor's estate, and therefore could not be the subject of a preference payment. *(Keenan Pipe & Supply Company* v. *Shields, supra,* 241 F.2d at p. 490.) Finally, the court held that the payment was made as the result of a new agreement supported by new consideration (the creditor's forbearance) or a tripartite agreement in which new consideration was furnished. *(Ibid.)* Again, it must be recalled that the "new value" concept had not been codified in the bankruptcy statute when *Keenan Pipe* was decided.

*Flooring Concepts,* a decision by the Ninth Circuit Bankruptcy Appellate Panel, did not involve the contemporaneous exchange exception at all. The

---

[7]See Comment, *Bankruptcy Preference Actions: New Value and Inchoate Statutory Liens —An Examination of the Definitive Case Law Split* (1980) 21 U. West L.A. L.Rev. 89, and cases collected in 111 A.L.R.Fed. 409.

[8]Angeles places sole reliance among the exceptions on the contemporaneous exchange provision. We note that subdivision (c)(6), excepting fixing of a statutory lien, also has been held inapplicable in the context of a mechanic's lien. *(Hatfield, supra,* 91 Bankr. at p. 786.)

case involved a familiar scenario, similar to this case up to a point. A subcontractor failed to pay a supplier on a construction job. It was arranged that the general contractor would pay the supplier, and the supplier would refrain from enforcing its mechanic's lien. Payments were made on that basis, after which the subcontractor went into bankruptcy. The court held that the payments were not avoidable preferences for the fundamental reason that no money was paid by the debtor. Relying on *Keenan Pipe*, the court concluded "[p]ayments made by a contract debtor of a bankrupt to a creditor of the bankrupt do not become part of the bankruptcy estate where there is an independent obligation on the part of the debtor to pay the creditor." (37 Bankr. at p. 961.)

*Anderson Plumbing* is a section 1800 subdivision (c)(1) case, and it is on point. The case involved a plumbing contractor who had a contract to do plumbing work on a public school. A supplier sold materials to the contractor for use on the job. The supplier perfected its lien against the project. The contractor made a payment to the supplier during the preference period and, when the contractor went into bankruptcy, its trustee sought to recover the payment as an avoidable preference. It was conceded that the payment was a preference; the only issue was whether the contemporaneous exchange exception applied. Observing that there was then (1985) no authority on the issue in California state or Ninth Circuit decisions, the court held the preference was not avoidable. It reasoned that, just as a direct payment by an owner to the supplier of a contractor does not result in an avoidable preference as to the contractor, neither should a direct payment by the contractor result in such a preference. In each case, the contractor's creditor surrenders lien rights against third parties (the owner, an owner's retention fund, or a surety), resulting in contemporaneous exchange for new value. (71 Bankr. at p. 20.)

In reaching its decision, the court relied on *In re Dick Henley, Inc.* (Bankr. M.D.La. 1984) 38 Bankr. 210, and *In re Advanced Contractors* (Bankr. M.D.Fla. 1984) 44 Bankr. 239. These cases have been thoroughly discredited. Each involved debtor contractors who made prepetition payments to subcontractors on debts arising from construction contracts. The subcontractors perfected liens on property of third party owners of the construction site. The owners had unsecured rights of indemnification against the debtor contractors. The courts concluded that the constructive release of lien rights by the subcontractors gave rise to new value to the debtor contractors. That is the same argument urged by Angeles in this case.

In *Chase & Sanborn*, the Eleventh Circuit described the reasoning of the *Henley* and *Advanced Contractors* cases as "circular and ill-founded evasion

of the policy against preferential transfers." The court recognized that if the debtor contractors had not paid the subcontractors, the latter presumably would have foreclosed on their liens against the property owners, resulting in an assertion of indemnification rights by the owners against the contractor. But the payments added no new value to the debtor's estate. "Thus, by making the payments, the debtor/contractors gained nothing more than release of a contingent obligation—an antecedent debt—owed to an unsecured creditor. . . . [S]uch a release cannot constitute 'new value' under section 547." (904 F.2d at p. 596.)

In *Fuel Oil,* the Fifth Circuit found new value to the debtor's estate by reason of a third party's release of a collateral it held in the estate. Apparently, the *Henley* rationale had been urged as an alternative basis for the decision. The court expressly declined to follow *Henley,* "a case which . . . was correctly criticized by the district court" (i.e., the trial court in the case under review). The court went on to point out that "the principle underlying § 547(c)(1) was offended by the [*Henley* decision] because the released right of indemnity provided nothing of tangible value to the debtor's estate. Therefore, the estate was depleted by the debtor's payment to the detriment of the unsecured creditors." (837 F.2d 230; see also fn. 16.) We agree with that assessment.

The final case of the series, *E. R. Fegert,* also involves prepetition payments by a contractor to subcontractors, who, in exchange, released unsecured claims against the debtor and the debtor's surety. The court reasoned that, as holder of a contingent claim, the surety was a creditor of the debtor and held an equitable lien on proceeds due the contractor in a Miller Act project to construct a public highway. (40 U.S.C. §§ 270a-270d.) The debtor paid the subcontractors under a tripartite arrangement by which the subcontractors released their liens against the surety in exchange for direct payments by the debtor. The court observed that if the surety had paid the subcontractors directly, there would have been no preference, and concluded that the result should not be different because they were paid by the debtor instead. (88 Bankr. at pp. 259-260.) While the decision might be explained as one of the tripartite agreement cases which do not result in an avoidable preference, the fact that the debtor made the payments, and the court's statement that " 'new value' [was given] in a substantially contemporaneous exchange" (*id.* at p. 260) obviates that basis of distinction. The case is, instead, one of the few that hold, in a situation analogous to our case, that section 1800 subdivision (c)(1) applies.

With respect, we believe *Chase & Sanborn, Fuel Oil, SOCAP, Hatfield,* and other cases we have cited or to which we have referred (see 111 A.L.R.

Fed. 409) present the better reasoned view.[9] They are entirely congruent with the purposes of the preference and exemption provisions of the federal statute, while the minority cases are not. ■ More fundamentally, adherence to cases that find a contemporaneous exchange where a creditor surrenders rights against a third party and the debtor receives nothing but a reduction of its debt, would do violence to the statutory definition of "new value," transforming it from a requirement that tangible value be received by the debtor to a mere requirement of contract consideration.[10] That construction would do violence to the federal statute, and it represents a course we cannot follow. (See *Seaboard Acceptance Corp.* v. *Shay* (1931) 214 Cal. 361, 369 [5 P.2d 882]; *Blair* v. *Pitchess* (1971) 5 Cal.3d 258, 282 [96 Cal.Rptr. 42, 486 P.2d 1242, 45 A.L.R.3d 1206]; *Estate of Sanders* (1992) 2 Cal.App.4th 462 [3 Cal.Rptr.2d 536].)

■ Since the California statute is based on the federal provision, we conclude that the same result must obtain in this case: Buckley received no new value from its prepetition payments to Angeles and Angeles's release of its mechanic's lien on the owner's property. As a result, the trial court properly found those payments to be recoverable preferences.

## IV

■ Angeles points out that the mechanic's lien law enjoys constitutional dignity, and that the constitutional provision, by itself, creates a lien in favor of laborers and suppliers of material to a construction project. (Cal. Const., art. XIV, § 3.)[11] Whether or not self-implementing (see *Frank Curran Lbr. Co.* v. *Eleven Co.* (1969) 271 Cal.App.2d 175, 183 [76 Cal.Rptr. 753]; *Parsons Brinckerhoff Quade & Douglas, Inc.* v. *Kern County Employees Retirement Assn.* (1992) 5 Cal.App.4th 1264, 1269 [7 Cal.Rptr.2d 456]), the

[9]We do not agree, however, with Spector's attempt to distinguish some of Angeles's authorities on the ground that they arose out of public works projects. That circumstance, by itself, does not affect the result. (See *Keenan Pipe & Supply* v. *Shields, supra,* 241 F.2d at p. 489; *Flooring Concepts, supra,* 37 Bankr. at p. 961.)

[10]See 21 U. West L.A. L.Rev. 89, 105, in which the commentator concludes, "It must be remembered that to expand the parameters of the bankruptcy code definition of new value or to redefine it is not correctly left to judicial supposition or conjecture. Rather, it is a legislative function, within the complete province of Congress. When finding new value in the forbearance of an inchoate statutory lien, the courts clearly have taken over a legislative function in shaping the law rather than merely enforcing it."

[11]Section 3 of article XIV of the California Constitution provides: "Mechanics, persons furnishing materials, artisans, and laborers of every class, shall have a lien upon the property upon which they have bestowed labor or furnished material for the value of such labor done and material furnished; and the Legislature shall provide, by law, for the speedy and efficient enforcement of such liens."

law is fully implemented by statute. (Civ. Code, § 3109 et seq.) Like most other rights, the right to enforce a mechanic's lien may be waived or surrendered. (See *A. A. Baxter Corp.* v. *Home Owners & Lenders* (1970) 7 Cal.App.3d 725 [86 Cal.Rptr. 854].) Angeles's acceptance of payments from Buckley resulted in an express surrender of its mechanic's lien, as Angeles itself concedes.

Its argument that, notwithstanding this loss, its rights should be resurrected by construction of the preference recovery statute, would do violence to the language of that law. We are not in a position to delete what the Legislature has provided, nor add to what it has stated. (See *Woodland Joint Unified School Dist.* v. *Commission on Professional Competence* (1992) 2 Cal.App.4th 1429, 1452 [4 Cal.Rptr.2d 227].) Unlike *Parsons Brinckerhoff Quade & Douglas, Inc.* v. *Kern County Employees Retirement Assn.*, *supra*, 5 Cal.App.4th 1264, relied upon by Angeles, we are not dealing with a statute that purports to abrogate a mechanic's lien or render it unenforceable by any of the persons within the class of its constitutional and statutory protection. The lien in this case was lost, instead, because the supplier was paid and expressly released it. The fact that the payment may be recovered by an assignee for benefit of creditors when the requirements of section 1800 are satisfied does not interdict the California Constitution.

It may be that a party in Angeles's position can be protected by a tripartite payment arrangement, as discussed in several of the cases, by which a third party makes the payments. That issue was not briefed in this case, and we do not decide it. It may be that the party could be protected in other ways, through other legal instruments. To the degree these do not suffice, a remedy must be sought by statute (e.g., by an additional exemption in the subdivision (c) series of section 1800, or by a provision in the Mechanic's Lien Law similar to Civil Code section 3193). We cannot supply it by rewriting the statute.

## DISPOSITION

We conclude that the payments by Buckley to Angeles which are the subject of the summary adjudication reviewed in this case are recoverable preferences by the assignee for benefit of creditors. The trial court ruled

correctly in so deciding. We therefore dissolve the alternative writ and stay, previously issued, and deny petitioner's application for a peremptory writ.

Vogel (C. S.), J., and Hastings, J., concurred.

Petitioner's application for review by the Supreme Court was denied November 3, 1994.