**In re PIRANHA, INC., Debtor.**

**Richard S. Berger, Appellant,**

v.

**Piranha, Inc., Appellee.**

No. Civ.A.3:01–CV–2223–D. Bankruptcy Nos. 01–3611–RCM– 11 to 01–36614–RCM–11.

United States District Court, N.D. Texas, Dallas Division.

June 20, 2003.

---

Richard W. Ward, Law Office of Richard W. Ward, Dallas, TX, for Richard S. Berger.

Peter C. D'Apice, Gogi Malik, Andrews & Kurth, Dallas, TX, for Piranha, Inc.

D. Wade Cloud, Jr., Laurie A. Spindler, Hiersche, Hayward, Drakeley & Urbach, Addison, TX, for Robert Newhouse, Chapter 7 Trustee.

APPEAL FROM THE UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS

FITZWATER, District Judge.

This is an interlocutory appeal that challenges the bankruptcy court's October 10, 2001 order denying appellant Richard S. Berger's ("Berger's") motion to dismiss the bankruptcy of debtor Piranha, Inc. ("Piranha") for want of subject matter jurisdiction.[1] The court affirms the bankruptcy court's order.

I

For reasons that need not be explained in detail, in order for Piranha to have filed

---

1. Berger sought leave to appeal on October 22, 2001. The court granted the motion on November 30, 2001. Thereafter, the appeal lay dormant as the parties attempted to reach a settlement, and the court extended the briefing deadlines several times. On June 4, 2003, however, after it appeared that efforts at settlement had been exhausted and the parties requested no additional continuances of the briefing schedule, the court reopened the appeal.

for chapter 11 protection[2] on August 8, 2001 and for the bankruptcy court now to have subject matter jurisdiction over Piranha's bankruptcy case, it is necessary that Michael Steele ("Steele") was still a Piranha director as of the June 15, 2001 meeting of Piranha's Board of Directors.[3] Berger maintained in the bankruptcy court that Steele was not a director because he had resigned, as evidenced by a May 29, 2001 Form 8–K that Piranha's general counsel prepared and Piranha filed with the Securities and Exchange Commission ("SEC") under Regulation S–T, 17 C.F.R. § 232.302 (2003). The Form 8–K stated that Steele had resigned as a director as of May 25, 2001. Berger moved to dismiss the bankruptcy on that basis, i.e., that Steele was not a director and therefore a purported successor director—Mike Churchill ("Churchill")—could not have authorized the subsequent bankruptcy filing. Following a hearing, the bankruptcy court denied the motion.

## II

### A

 "The court reviews the bankruptcy court's conclusions of law *de novo*, but reviews its fact findings only for clear error." *In re Nary*, 253 B.R. 752, 756 (N.D.Tex.2000) (Fitzwater, J.) (quoting *In re ICH Corp.*, 230 B.R. 88, 91 n. 10

(N.D.Tex.1999) (Fitzwater, J.) (citations omitted)). "A finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed." *In re Johnson Southwest, Inc.*, 205 B.R. 823, 827 (N.D.Tex.1997) (Fitzwater, J.) (quoting *In re Placid Oil Co.*, 158 B.R. 404, 412 (N.D.Tex.1993) (Fitzwater, J.)). "If the trier of fact's account of the evidence is plausible in light of the record viewed in its entirety, the appellate court may not reverse it." *Id.* "[T]his court does not find facts. Neither is it free to view the evidence differently as a matter of choice." *Id.* "The bankruptcy judge's 'unique perspective to evaluate the witnesses and to consider the entire context of the evidence must be respected.'" *Id.* (quoting *Endrex Exploration Co. v. Pampell*, 97 B.R. 316, 323 (N.D.Tex.1989) (Fitzwater, J.)).

### B

 The bankruptcy court found that Steele did not resign on May 25 or 29, 2001—did not in fact resign until June 16, 2001—because he refrained from submitting his formal written resignation due to questions about the validity of the May 25, 2001 directors meeting and the possibility that Churchill was not validly appointed to the Board. *See* R. 10, 13.[4] The bankrupt-

---

2. The bankruptcy court converted Piranha's case to a chapter 7 liquidation on April 1, 2003 and appointed a trustee. The chapter 7 trustee filed the brief of appellee in this appeal.

3. *See* Appellant Br. at 7 n. 4:

 Whether or not Steele resigned is the central issue to the resolution of this appeal. If Steele had resigned on or before May 29, 2001, all actions of the Board of Directors after May 29, 2001, are improper because none of the actions were approved by both of the remaining directors, Berger and Sample. If Steele resigned on or before

May 29, 2001, any action taken by the Board of Directors, which relied on a vote by Churchill is invalid because Churchill was not a validly elected director.

4. Although the bankruptcy court's memorandum opinion is lengthy and detailed, it does not squarely address the question that controls today's decision. Although the court "recognized that Berger takes the position that the May 2001 8–K constitutes a written resignation by Steele, even though not signed by him, ..." R. 11–12, it did not explicitly hold that the Form 8–K did not constitute a written resignation under Delaware state law

cy court also found that Steele decided to wait to submit his written resignation until he had obtained confirmation from Piranha's general counsel that the May 25, 2001 meeting was valid. R. 10. The court found further that Steele did not resign orally—a question of intent—because his conduct was more consistent with not having resigned. *See* R. 12–13.

Berger contends, in pertinent part, that Steele resigned from the Board in writing, as evidenced by Piranha's Form 8–K, and that the bankruptcy court erred as a matter of law in refusing to find that the Form 8–K was not a written resignation. He argues that Steele resigned no later than May 29, 2001, when Piranha filed with the SEC the Form 8–K that bore his electronic signature and, consistent with Piranha's

contemporaneous press releases, failed to state any condition on his resignation and clearly stated that the resignation was effective May 25, 2001. Berger maintains that the bankruptcy court ignored the Delaware Uniform Electronic Transactions Act ("UETA"), Del.Code Ann. tit. 6, §§ 12A–101–117 (2002), which he contends precludes Steele from asserting that his electronic signature was not his signature or was not a written signature. He also posits that the bankruptcy court erred in failing to determine that Steele implicitly waived any rights or benefits that 17 C.F.R. § 232.302(b), a proviso of Regulation S–T, may have conferred on him.

Regulation S–T is an electronic signature regulation that governs certain SEC filings.[5] It assumes that electronic signa-

---

or Piranha's bylaws. Nevertheless, "[i]f a trial judge fails to make a specific finding on a particular fact, the reviewing court may assume that the court impliedly made a finding consistent with his general holding so long as the implied finding is supported by the evidence." *Endrex*, 97 B.R. at 323. The bankruptcy court implicitly found that the Form 8–K was not a written resignation because it more generally found that Steele decided to wait to submit his formal written resignation until he had obtained confirmation that the May 25, 2001 Board of Directors meeting was validly conducted. By contrast, it found that another director, Larry Greybill, submitted his formal written resignation despite the validity issue. *See* R. 10.

**5.** Regulation S–T, "General Rules and Regulations for Electronic Filings Preparation of Electronic Submissions," states:

§ 232.302 Signatures.
(a) Required signatures to, or within, any electronic submission (including, without limitation, signatories within the certifications required by §§ 240.13a–14, 240.15d–14 and 270.30a–2 of this chapter) must be in typed form rather than manual format. Signatures in an HTML document that are not required may, but are not required to, be presented in an HTML graphic or image file within the electronic filing, in compliance with the formatting requirements of

the EDGAR Filer Manual. When used in connection with an electronic filing, the term "signature" means an electronic entry in the form of a magnetic impulse or other form of computer data compilation of any letters or series of letters or characters comprising a name, executed, adopted or authorized as a signature. Signatures are not required in unofficial PDF copies submitted in accordance with § 232.104.
(b) Each signatory to an electronic filing (including, without limitation, each signatory to the certifications required by §§ 240.13a–14, 240.15d–14 and 270.30a–2 of this chapter) shall manually sign a signature page or other document authenticating, acknowledging or otherwise adopting his or her signature that appears in typed form within the electronic filing. Such document shall be executed before or at the time the electronic filing is made and shall be retained by the filer for a period of five years. Upon request, an electronic filer shall furnish to the Commission or its staff a copy of any or all documents retained pursuant to this section.
(c) Where the Commission's rules require a registrant to furnish to a national securities exchange or national securities association paper copies of a document filed with the Commission in electronic format, signatures to such paper copies may be in typed form.

tures have been "executed, adopted or authorized as a signature" by the person whose signature is transmitted electronically. *See* § 232.302 (" 'signature' means an electronic entry . . . comprising a name, executed, adopted or authorized as a signature"). The bankruptcy court, by finding that Steele did not submit a formal written resignation until June 16, 2001, implicitly found that Steele did not execute, adopt, or authorize his signature on the Form 8–K as his written resignation from the Board of Directors. This factual finding is not clearly erroneous.

Nor has Berger demonstrated that the Delaware UETA precluded Piranha from demonstrating that Steele's electronic signature was not executed, adopted, or authorized with respect to the Form 8–K. Berger contends that under § 107(a) of the UETA, "Steele cannot disavow or deny the 'legal effect or enforceability' of his signature." Appellant Br. at 10. This assertion is at least incomplete if not seriously misleading. Section 107(a) actually states that "[a] record or signature may not be denied legal effect or enforceability *solely because it is in electronic form.*" (emphasis added). In other words, § 107(a) forecloses the assertion that a signature is not binding because it is an *electronic* signature. Section 107(a) says nothing about proving that an electronic signature was *neither executed, adopted, nor authorized.* Berger also cites § 107(c), which states that "[i]f a law requires a record to be in writing, an electronic record satisfies the law." *See* Appellant Br. at 10 (quoting § 107(c)). This provision does not purport to address an electronic signature that was neither executed, adopted, nor authorized. Moreover, § 109(a) of the UETA—which Berger does not cite—provides, in pertinent part, that an "electronic signature is attributable to a person *if it was the act* of the person." (emphasis added). Section 109(b) states:

The effect of an electronic record or electronic signature attributed to a person under subsection (a) of this section is determined from the context and surrounding circumstances at the time of its creation, execution, or adoption, including the parties' agreement, if any, and otherwise as provided by law.

Section 109 suggests that the UETA does not preclude a person from contesting that he executed, adopted, or authorized an electronic signature that is purportedly his.

The bankruptcy court neither clearly erred in finding that Steele did not resign until June 16, 2001 nor erred as a matter of law in its relevant legal conclusions. Accordingly, the bankruptcy court's October 10, 2001 order denying Berger's motion to dismiss is

AFFIRMED.