**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SHERWOOD PARTNERS, INC.,
Assignee for the Benefit of
Creditors of International
Thinklink Corporation,
        *Plaintiff-counter-defendant-*
                *Appellee,*

        v.

LYCOS, INC., a Delaware
Corporation aka Delaware Lycos,
Inc.,
        *Defendant-counter-claimant-*
                *Appellant.*

No. 03-55247

D.C. No.
CV-01-05403-GAF

OPINION

Appeal from the United States District Court
for the Central District of California
Gary A. Feess, District Judge, Presiding

Argued and Submitted
June 8, 2004—Pasadena, California

Filed January 12, 2005

Before: Dorothy W. Nelson, Alex Kozinski and
Susan P. Graber, Circuit Judges.

Opinion by Judge Kozinski;
Dissent by Judge D.W. Nelson

417

**COUNSEL**

James S. Monroe and Walter T. Johnson, Nixon Peabody LLP, San Francisco, California, for the defendant-appellant.

Irving Sulmeyer and Janis G. Abrams, SulmeyerKupetz, Los Angeles, California, for the plaintiff-appellee.

**OPINION**

KOZINSKI, Circuit Judge:

We consider whether the Bankruptcy Code preempts a state statute that gives an assignee selected by the debtor the power to void preferential transfers that could not be voided by an unsecured creditor.

## Facts

Thinklink Corp., a unified messaging service provider, entered into an agreement with Lycos, which operates a network of web sites. Lycos agreed to promote Thinklink's messaging service on Lycos web sites exclusively for two years. Thinklink eventually defaulted on one of its payments; Lycos nevertheless continued to display links to Thinklink's messaging service. Lycos and Thinklink renegotiated their agreement, shortening the exclusivity period to 90 days and reducing Thinklink's remaining payments from over $17 million to $1 million plus stock. Thinklink delivered the $1 million but not the stock, and about two months later made a voluntary general assignment for the benefit of creditors to Sherwood Partners. Sherwood shut down Thinklink's business and sued Lycos in state court under Cal. Civ. Proc. Code § 1800 to recover the $1 million payment as a preferential transfer.[1]

Lycos removed to federal court on diversity grounds and moved to dismiss, arguing that section 1800 was preempted by the Bankruptcy Code. The district court denied Lycos's motion and eventually granted summary judgment to Sherwood. Lycos appeals.

---

[1]The statute provides that:

[T]he assignee of any general assignment for the benefit of creditors . . . may recover any transfer of property of the assignor:

(1)  To or for the benefit of a creditor;

(2)  For or on account of an antecedent debt owed by the assignor before the transfer was made;

(3)  Made while the assignor was insolvent;

(4)  Made on or within 90 days before the date of the making of the assignment . . . ; and

(5)  That enables the creditor to receive more than another creditor of the same class.

Cal. Civ. Proc. Code § 1800(b).

**Discussion**

**[1]** Congress has broad authority to preempt state laws, but whether Congress has done so in a particular instance is a matter of congressional intent. This intent is most easily detected where the statute expressly preempts other laws, but preemption may also be inferred where it is clear from the statute and surrounding circumstances that Congress intended to occupy the field, leaving no room for state regulation. The Supreme Court, in *Pacific Gas & Electric Co.* v. *State Energy Resources Conservation & Development Commission*, 461 U.S. 190 (1983), summarized the contours of the field preemption doctrine:

> Absent explicit pre-emptive language, Congress' intent to supersede state law altogether may be found from a " 'scheme of federal regulation . . . so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it,' because 'the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject,' or because 'the object sought to be obtained by the federal law and the character of obligations imposed by it may reveal the same purpose.' "

*Id.* at 203-04 (quoting *Fid. Fed. Sav. & Loan Ass'n* v. *De la Cuesta*, 458 U.S. 141, 153 (1982) (quoting *Rice* v. *Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947))). "Even where Congress has not entirely displaced state regulation in a specific area," the Court continued, "state law is pre-empted . . . where [it] 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " *Id.* at 204 (quoting *Hines* v. *Davidowitz*, 312 U.S. 52, 67 (1941)).

**[2]** There can be no doubt that federal bankruptcy law is "pervasive" and involves a federal interest "so dominant" as

to "preclude enforcement of state laws on the same subject"—much like many other areas of congressional power listed in Article I, Section 8, of the Constitution, such as patents, copyrights, currency, national defense and immigration. The Bankruptcy Clause, which grants Congress the power to make bankruptcy laws, U.S. Const. art. I, § 8, cl. 4, stresses that such rules must be "uniform." Bankruptcy law occupies a full title of the United States Code. It provides a comprehensive system of rights, obligations and procedures, as well as a complex administrative machinery that includes a special system of federal courts and United States Trustees.

**[3]** At the same time, federal law coexists peaceably with, and often expressly incorporates, state laws regulating the rights and obligations of debtors (or their assignees) and creditors. *See, e.g.*, 11 U.S.C. § 522(b)(2) (incorporating state personal exemptions to the bankruptcy estate); *id.* § 544(b) (making state law on voidable transfers available to the bankruptcy trustee); *id.* § 543(d)(2) (excusing some assignees for the benefit of creditors from compliance with property turnover requirements). In determining whether Cal. Civ. Proc. Code § 1800 is preempted, we must consider whether it is merely another creditor rights provision of the kind that is tolerated by the Bankruptcy Code, or whether it gives the state assignee powers that are within the heartland of bankruptcy administration.

Sherwood argues that the preference avoidance provisions of section 1800 are not only tolerated but specifically incorporated by the Bankruptcy Code through section 544(b), which allows a bankruptcy trustee to avoid any transfers voidable by unsecured creditors under "applicable law" (including state law).[2] Section 544(b), says Sherwood, "manifest[s] congres-

---

[2]Section 544(b) provides, in relevant part, that "the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim." 11 U.S.C. § 544(b).

sional intent not to preempt state statutes invalidating preferences. . . . Empowering bankruptcy trustees to so act *a fortiori* manifests a congressional intent that state statutes are valid and available to be used by a bankruptcy trustee." Reply Br. of Appellee at 30. The Supreme Court in *Stellwagen* v. *Clum*, 245 U.S. 605 (1918), in fact cited section 70e of the Bankruptcy Act of 1898, the precursor to section 544(b), in upholding a statute allowing assignees to void certain preferential transfers. *See id.* at 614, 618.

But the trustee's powers under section 544(b) are limited to those of unsecured creditors—such as the right of an individual unsecured creditor to set aside fraudulent conveyances under state law. *See, e.g.*, *Decker* v. *Advantage Fund Ltd.*, 362 F.3d 593, 596 (9th Cir. 2004) (involving a claim, under section 544(b), to avoid a transfer using California's Uniform Fraudulent Transfer Act, Cal. Civ. Code § 3439.04). Similarly, the Ohio statute upheld in *Stellwagen*, unlike the California statute at issue here, gave court-appointed trustees only those avoidance powers already held by "[a]ny creditor or creditors." 245 U.S. at 611 n.1 (quoting the statute).[3] By contrast, the power to set aside preferential transfers under California's section 1800 can be exercised only by general assignees, not by individual unsecured creditors. In other words, the assignee appointed pursuant to section 1800 is given new avoidance powers by virtue of his position.

**[4]** To make *Stellwagen* and section 544(b) cover this case would require us to read the term "creditor" in section 544(b) as encompassing representatives of creditors such as Sherwood. We doubt that Congress had Sherwood in mind when

---

[3]The state statute at issue in *Stellwagen* was not a true preference statute, like Cal. Civ. Proc. Code § 1800 and 11 U.S.C. § 547, in that it required that the transfer have been made in contemplation of insolvency or with an intent to defraud creditors, making it more akin to a fraudulent conveyance statute. This distinction does not make a difference for purposes of our analysis.

describing unsecured creditors in section 544(b). The Bankruptcy Code defines "creditor," in relevant part, as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A). "Custodian" is a different concept, which includes receivers, trustees and "assignee[s] under a general assignment for the benefit of the debtor's creditors." *Id.* § 101(11). In fact, Congress defined custodian using the word "creditor" in two places. *See id.* § 101(11)(B), (C). Custodians, instead of being by their nature creditors, stand in a certain fiduciary relation to creditors. But Congress did not mention custodians alongside creditors in section 544(b). We are therefore unable to read "creditor" in section 544(b) to include custodians. *See Dubis* v. *B.W. Supply* (*In re Delta Group*), 300 B.R. 918, 923-24 (Bankr. E.D. Wis. 2003); 5 *Collier on Bankruptcy* ¶ 544.09[4], at 544-21 & n.26 (Lawrence P. King et al. eds., 15th ed. rev. 2004) ("creditor" in section 544(b) includes assignees or successors of the original creditor, but "[a]n assignee for the benefit of creditors . . . is not such a creditor"); *see also In re Komfo Prods. Corp.*, 247 F. Supp. 229, 237 (E.D. Pa. 1965); Vern Countryman, *The Use of State Law in Bankruptcy Cases (Part II)*, 47 N.Y.U. L. Rev. 631, 663 (1972) (if Congress intended "any creditor" in section 70e, the precursor to section 544(b), to mean "any representative of any creditor," "it would be desirable to amend [the statute] to say so"). *Contra Zimmerman* v. *Frem Corp.* (*In re Kenval Mktg. Corp.*), 69 B.R. 922, 929-31 (Bankr. E.D. Pa. 1987).[4] Thus, section 544(b) of the Bankruptcy Code, and

---

[4]We note that the Supreme Court, frowning on extending the meaning of statutory terms for policy reasons, has recently declined to read "trustee" in 11 U.S.C. § 506(c) as including administrative claimants. *See Hartford Underwriters Ins. Co.* v. *Union Planters Bank, N.A.*, 530 U.S. 1, 14 (2000). The Court reiterated that "when the statute's language is plain, the sole function of the courts . . . is to enforce it according to its terms." *Id.* at 6 (quoting *United States* v. *Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989) (quoting *Caminetti* v. *United States*, 242 U.S. 470, 485 (1917))) (internal quotation marks omitted).

its partial incorporation of state transfer avoidance law, does not save the California statute from preemption.

The question remains whether the section 1800 assignee's special avoidance powers, though not expressly incorporated into the Bankruptcy Code by section 544(b), nevertheless can peaceably coexist with the federal bankruptcy scheme. To answer this question we must consider the essential goals and purposes of federal bankruptcy law, and then determine whether section 1800 is consistent with them.

**[5]** It is generally agreed that chapter 7 of the Bankruptcy Code, which governs liquidations, embodies two ideals: (1) giving the individual debtor a fresh start, by giving him a discharge of most of his debts; and (2) equitably distributing a debtor's assets among competing creditors. *See Stellwagen*, 245 U.S. at 617. As the leading bankruptcy treatise explains, these two goals are separate and operate somewhat independently of each other:

> From the creditors' viewpoint, chapter 7 establishes the concept of *equitable distribution* among creditors of a debtor's resources which, in most cases, are insufficient to permit full payment to all. From the individual debtor's vantage point, chapter 7 permits the honest debtor to obtain a new financial life through the *discharge* of unpaid debts. *Neither concept is dependent on the other.* Thus, in many chapter 7 cases, which may also be called "no-asset" cases, the debtor has no property realizable by creditors. Nevertheless, unless the debtor has committed [certain acts, he] is entitled to a full discharge and release from all debts except those rendered nondischargeable . . . . *The distribution to creditors is also not affected by whether or not the debtor obtains a discharge.* Should discharge be denied, and property exists in the chapter 7 estate available to creditors, distribution will occur.

1 *Collier on Bankruptcy* ¶ 1.03[2][a], at 1-22 (emphasis added) (footnotes omitted).

**[6]** We know, because the Supreme Court has repeatedly told us, that state statutes that purport to perform the first of these functions, by giving debtors a discharge of their debts, are preempted. *See Int'l Shoe Co.* v. *Pinkus*, 278 U.S. 261, 265-66 (1929); *see also Pobreslo* v. *Joseph M. Boyd Co.*, 287 U.S. 518, 525 (1933); *Stellwagen*, 245 U.S. at 615-16. That the state discharge statute may be compatible with (or even identical to) the federal discharge statute makes no difference. Nor does it matter that a creditor may be able to opt out of the state insolvency proceeding by commencing an involuntary federal bankruptcy proceeding; indeed, according to *Stellwagen*, it does not even matter whether a federal bankruptcy act is in effect. *Id.* at 615 ("It is settled that a State may not pass an insolvency law which provides for a discharge of the debtor from his obligations, which shall have the effect of a bankruptcy discharge as to creditors in other States, and this although no general federal bankruptcy act is in effect."). Such state procedures are preempted simply because the ability to grant a discharge is "one of the principal requisites of a true bankruptcy law." *Id.* at 616.

**[7]** What goes for state discharge provisions also holds true for state statutes that implicate the federal bankruptcy law's other major goal, namely equitable distribution. Bankruptcy law accomplishes equitable distribution through a distinctive form of collective proceeding. This is a unique contribution of the Bankruptcy Code that makes bankruptcy different from a collection of actions by individual creditors. In a world of individual actions, each creditor knows that if he waits too long, the debtor's assets will have been exhausted by the demands of the quicker creditors and he will recover nothing. The creditors race to the courthouse, all demanding immediate payment of their entire debt. Like piranhas, they make short work of the debtor, who might have survived to pay off more of his debts with a little bit of reorganization—or at

least might have more equitably fed the slower piranhas. *See, e.g.*, *In re Hoskins*, 102 F.3d 311, 316 (7th Cir. 1996) (noting the Bankruptcy Code's purpose of "preventing a mutually destructive feeding frenzy by creditors"), *rev'd on other grounds*, *Assoc. Comm. Corp.* v. *Rash*, 520 U.S. 953, 965 (1997); *In re Kish*, 41 B.R. 620, 624 (Bankr. E.D. Mich. 1984) (describing the "piranha-like attacks of creditors"). *Don't see Piranha* (New World Pictures 1978). *But see Berger* v. *Piranha, Inc.* (*In re Piranha, Inc.*), 297 B.R. 78 (N.D. Tex. 2003) (a case where the creditors got the Piranha).

Federal bankruptcy law seeks to avoid this scenario by "creat[ing] a whole system under federal control which is designed to bring together and adjust all of the rights and duties of creditors and embarrassed debtors alike." *MSR Exploration, Ltd.* v. *Meridian Oil, Inc.*, 74 F.3d 910, 914 (9th Cir. 1996). The filing of a bankruptcy petition brings a bankruptcy estate into being and triggers an automatic stay, which prevents creditors from enforcing their claims, thus preserving the debtor's assets for ultimate distribution by the bankruptcy trustee. *See* 11 U.S.C. §§ 301-303, 362; *see also* 1 *Collier on Bankruptcy* ¶ 1.03[2][b], at 1-24 to 1-25.

One of the major powers the Code gives the trustee is the power to avoid preferential transfers.[5] The trustee is authorized to recover these sums for the use of the bankruptcy estate in making its distribution to creditors. Of course, this power, like all others, may be exercised only under the supervision of the federal courts; and the trustee exercising those powers to liquidate a corporation is not hand-picked by the debtor, as was Sherwood, but appointed and supervised by the United States Trustee, an official of the Department of Justice, *see* 11 U.S.C. § 701, or elected by the creditors, *see id.*

---

[5] The trustee may avoid preferences either under 11 U.S.C. § 547(b) or under state law (as incorporated into the Bankruptcy Code by section 544(b)) to the extent such transfers could be voided by an unsecured creditor.

§ 702, to ensure impartiality. Federal law protects creditors—particularly out-of-state creditors like Lycos—from the trustee's possible conflicts of interest and other possible sources of self-dealing, *see id.* § 327 (regulating what professionals a trustee may employ); *id.* § 328 (regulating the compensation of such professionals); Fed. R. Bankr. P. 2014 (regulating employment of professionals), and generally provides extensive disclosure, *see* Fed. R. Bankr. P. 1007, 2016, 9019.

[8] It is clear that if a state assignee under section 1800 recovers a preferential transfer and distributes its proceeds to creditors, this will preclude a federal trustee from recovering the same sum under the federal preference statute if a federal bankruptcy proceeding is begun. The creditor who disgorged the transfer cannot disgorge it twice; the creditors who later received the recovered money may be impossible to identify; and even if they can be identified, they may be gone or in financial difficulty themselves. The distribution of the recovered sum will then have been made by a state assignee subject to state procedures and substantive standards, rather than by the federal trustee subject to bankruptcy law's substantive standards and procedural protections.[6]

Sherwood points out that the creditor may be able to avoid this result by quickly filing an involuntary federal bankruptcy petition, which would have the effect of preempting the state proceedings. But this argument proves too much. The same would be true of a state statute that purported to give debtors a discharge: Creditors in that situation could presumably also

---

[6]This is not a matter for federal concern when the assignee has no special avoidance rights. If individual unsecured creditors can sue to recover preferences under state law, the same powers are also available to a bankruptcy trustee under section 544(b); there is obviously no conflict then between federal law and state law giving those powers to an assignee. To the extent a state assignee, who is less procedurally constrained than a bankruptcy trustee, may be free to engage in self-dealing, he can do nothing more than individual creditors, who are free to engage in all the self-dealing they want.

avoid the effect of state law by bringing a federal petition. Yet the Supreme Court has stated unequivocally that such state statutes are preempted. *See* page 427 *supra*.

In any event, the affected creditor (like Lycos) may not be able to run to federal court because in most cases (i.e., those where there are more than eleven creditors) at least three creditors are required to force the debtor into bankruptcy. 11 U.S.C. § 303(b)(1). And the action of the state assignee may diminish the likelihood that Lycos will be able to obtain the consent of other creditors. After all, if the state assignee succeeds in recovering the preferential transfer under state law, the other creditors may share in that bounty and might therefore have no interest in invoking the potentially more expensive and time-consuming federal processes.

This points to yet another vice of the state proceedings: Once they are commenced, they will affect the incentives of various parties as to whether they wish to avail themselves of federal bankruptcy law. The creditor whose ox is being gored by the state assignee may have a new incentive to begin an involuntary federal proceeding; other creditors, for the reasons explained above, may have diminished incentives. The provisions of the Bankruptcy Code, including those that explicitly incorporate certain state laws (like voluntary assignments, or preference recovery provisions available to unsecured creditors) carefully delineate the circumstances under which federal bankruptcy proceedings are to be initiated. We do not believe Congress contemplated state laws that would sharpen or blunt the effect of those statutory incentives.[7]

---

[7]*Perkins* v. *Petro Supply Co.* (*In re Rexplore Drilling, Inc.*), 971 F.2d 1219, 1222 (6th Cir. 1992), for instance, is fully consistent with this approach. That case held that section 544(b) incorporates a state avoidance statute that defines preferences differently from the federal definition in section 547(b). This is hardly surprising; there would be no point in expressly incorporating state laws if such laws did not occasionally differ from federal law. State laws incorporated by section 544(b) are part of the incentive system Congress set up in the Bankruptcy Code; they cannot be said to undermine these incentives. State laws that give assignees additional avoidance powers are not part of that system.

**[9]** *Stellwagen*, on which Sherwood relies heavily, is not to the contrary. As noted above, *see* pages 424-26 *supra*, the Supreme Court in *Stellwagen* did uphold a statute that allowed a state trustee to recover preferential transfers, but the preferential avoidance power the trustee exercised in that case was one that could have been exercised by any creditor. 245 U.S. at 611 n.1. While the Court in *Stellwagen* reiterated that a state statute granting a discharge would definitely be preempted, it left open whether other state statutes dealing with the subject of insolvency may also be preempted. *Id.* at 616. We believe that statutes that give state assignees or trustees avoidance powers beyond those that may be exercised by individual creditors trench too close upon the exercise of the federal bankruptcy power.[8] Congress has thought carefully about how collective insolvency proceedings are to be conducted and set both substantive standards and elaborate procedural protections to ensure a result that is fair to debtors and

---

[8]We do not, as the dissent claims, question the validity of voluntary assignments for the benefit of creditors, which have a venerable common-law pedigree, were upheld in *Pobreslo* and are specifically contemplated in the Bankruptcy Code. *See, e.g.*, 11 U.S.C. §§ 101(11)(B), 543(d)(2). The *Pobreslo* Court specifically noted that the voluntary assignment process it upheld did not create any new rights that did not already belong to the debtor or creditors:

> [T]he [state voluntary assignment] law merely governs the administration of trusts created by deeds like that in question, which do not differ substantially from those arising under common law assignments for the benefit of creditors. The substantive rights under such assignments depend upon contract; the legislation merely governs the execution of the trusts on which the property is conveyed. And as proceedings under any such assignment may be terminated upon petition of creditors filed within the time and in the manner prescribed by the federal Act . . . it is apparent that Congress intended that such voluntary assignments, unless so put aside, should be regarded as not inconsistent with the purposes of the federal Act.

*Pobreslo*, 287 U.S. at 526 (citation omitted). The statute we confront here goes further, giving the state assignee entirely new powers that are not derived from contract and trust law.

creditors alike. The exercise of the preference avoidance power by Sherwood under the authority of section 1800 is inconsistent with the enactment and operation of the federal bankruptcy system and is therefore preempted.

## Conclusion

**[10]** Because we hold that the California statute, Cal. Civ. Proc. Code § 1800, is preempted by the Bankruptcy Code, we remand to the district court for dismissal of the complaint.

**REVERSED.**

---

D.W. NELSON, Circuit Judge, dissenting:

I respectfully dissent because I disagree with the majority's preemption analysis. The majority states that California Civil Procedure Code § 1800 is preempted by federal bankruptcy law. However, the reasoning by which the majority reaches this result would preempt any number of state laws governing voluntary assignments for the benefits of creditors because those laws have the effect of altering the incentives of various affected parties to initiate bankruptcy proceedings. Under the majority's reasoning, any state statutory scheme, including those governing voluntary assignments for the benefit of creditors, that "give[s] state assignees or trustees avoidance powers beyond those that may be exercised by individual creditors trench[es] too close upon the exercise of the federal bankruptcy power." Majority Op. at page 431. State voluntary assignments, by definition, give the assignee more power than may be exercised by an individual creditor.[1] Because I believe

---

[1]The majority asserts that it does not question the validity of assignments for the benefit of creditors and that it invalidates section 1800 because it gives the state assignee new powers that are not derived from trust or contract law. Majority Op. at page 431 n.8. The state assignee,

that voluntary assignments for the benefit of creditors and related state statutes are not preempted by federal bankruptcy law, I cannot join the majority opinion.

Voluntary assignments for the benefit of creditors have their origins in English common law, and exist as an alternative to formal bankruptcy proceedings. *See Credit Managers Ass'n v. Nat'l Indep. Bus. Alliance*, 162 Cal. App. 3d 1166, 1169-1170 (2d. Dist. 1984). California's scheme requires that any assignment be for the benefit of all creditors, and does not allow preferences for any creditor or class of creditors. Cal. Civ. Proc. Code § 493.010(b)-(c). Creditors must be given notice and an opportunity to submit claims to the assignee. Cal. Civ. Proc. Code § 1802. These types of assignments are recognized by and incorporated in the federal bankruptcy code. *See, e.g.*, 11 U.S.C. § 101(11)(B) (defining "custodian" as, *inter alia*, "assignee under a general assignment for the benefit of the debtor's creditors"); § 543(d)(2) (excusing assignees appointed more than 120 days before the filing of a petition from turning debtor's property over to the trustee).

In *Pobreslo v. Boyd Co.*, the Supreme Court upheld a state scheme allowing voluntary assignment for the benefit of creditors, stating, "[I]t is apparent that Congress intended that such voluntary assignments . . . should be regarded as not inconsistent with the purposes of the federal Act." 287 U.S. 518, 526 (1933). When voluntary assignments contribute to bankruptcy's goal of equitable distribution, "quite in harmony with the purposes of the federal Act, the provisions of [state voluntary assignment laws] serve to protect creditors against each other and go to assure equality of distribution unaffected

---

regardless of the powers granted by section 1800, distributes a debtors assets among creditors and otherwise exercises powers on behalf of all creditors, thus exercising powers greater than any one creditor could exercise. I find it thus difficult to draw a line between the majority's arguments regarding section 1800 and problems with voluntary assignments, generally.

by any requirement or condition in respect of discharge." *Id.* Accordingly, the Supreme Court has held that state laws providing for discharge of debts are preempted by federal bankruptcy law, *see, e.g.*, *International Shoe Co. v. Pinkus*, 278 U.S. 261, 266 (1929), but has never suggested that state laws that regulate the distribution of assets in a voluntary assignment might face the same fate.

Yet the majority holds that section 1800 is preempted because it alters the incentives of creditors to initiate involuntary bankruptcy proceedings, thereby interfering with bankruptcy's goal of equitable distribution of a debtor's assets. The majority's concerns about section 1800 are not distinguishable from concerns about voluntary assignment provisions generally. *See, e.g.*, Majority Op. at pages 427-29 (describing how state law interferes with the unique collective form of proceeding established by bankruptcy law; discussing use of "hand-picked" trustee in state proceedings). As the majority recognizes, Majority Op. at page 431 n.8, it is well established that there is a common-law right to make an assignment of property for the benefit of creditors. It is thus illogical that state laws that provide a forum for the equitable distribution of that property should be preempted by federal bankruptcy law.

The majority argues that if a preferential transfer is recovered by the assignee under section 1800, the same sum could not be recovered if a federal bankruptcy proceeding were initiated later. Majority Op. at pages 428-29. But California's preference recovery provision is, by design, virtually identical to the bankruptcy code's preferential transfer statute. *See* 11 U.S.C. § 547(b), Cal. Code Civ. Proc. § 1800(b); *see also Angeles Electric Co. v. Superior Court*, 27 Cal. App. 4th 426, 430-431 (2d Dist. 1994) (discussing intentional conformance of section 1800 with federal bankruptcy law). If the same transfer can be avoided in both the state and federal systems, how does the state system interfere with bankruptcy's goal of equitable distribution? Both the state and federal statutes

serve to ensure equality of distribution and to deter the race to recover assets before insolvency. *See, e.g.*, H.R. Rep. 95-595, 177-178, *reprinted in* 1978 U.S.C.C.A.N. 5963, 6138; *see also Angeles Electric Co.*, 27 Cal. App. 4th at 430-431 (applying federal bankruptcy case law to interpret California statute). That California's voluntary assignment system has such a provision makes it more capable of effectuating the equality of distribution that is the aim of the bankruptcy law; it does not necessarily interfere with bankruptcy's goal of achieving equal distribution. The majority states that such state provisions are preempted because "they will affect the incentives of various parties as to whether they wish to avail themselves of federal bankruptcy law." Majority Op. at page 430. The purposes of federal bankruptcy law—as the majority sees it—are to provide discharge of debt and equal distribution of assets to creditors. Majority Op. at page 426. I fail to see how a preference recovery provision that assists in equal distribution interferes with either goal.

When the majority's reasoning is carried to its logical extension, it has the effect of pushing corporations threatened with insolvency from the less stigmatic, and less costly, voluntary assignment scheme into the world of federal bankruptcy. This should not have to be the case. I believe that both voluntary assignments and the bankruptcy system can "peaceably coexist" as twin mechanisms aimed at distributing the resources of an insolvent debtor. That voluntary assignments are incorporated into bankruptcy law, and that they have existed alongside bankruptcy law since its inception without causing an interference with the goal of equitable distribution, supports my conclusion that state voluntary assignments and the laws that effectuate them, should not be preempted by bankruptcy law. "[F]ederal regulation of a field of commerce should not be deemed preemptive of state regulatory power in the absence of persuasive reasons—either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakably so ordained." *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142

(1963). Here, Congress has not indicated that voluntary assignments, generally, or preferential transfer avoidance statutes, specifically, are to be preempted. Nor is the nature of the regulated activity—distribution of a debtor's assets—such that it is impossible to conclude that the state and federal schemes could not co-exist. The majority privileges federal bankruptcy law by suggesting that these collective proceedings are the only ones that Congress intended for the equitable distribution of debt to creditors. Because I am convinced that the two systems should co-exist, I respectfully DISSENT.