
[No. B175947. Second Dist., Div. Eight. May 31, 2006.]

DAVID R. HABERBUSH, as Assignee, etc., Plaintiff and Appellant, v. CHARLES AND DOROTHY CUMMINS FAMILY LIMITED PARTNERSHIP, Defendant and Appellant,

DAVID R. HABERBUSH, as Assignee, etc., Plaintiff and Respondent, v. BARRY L. VANTIGER, Defendant and Appellant,

DAVID R. HABERBUSH, as Assignee, etc., Plaintiff and Respondent, v. GEMMEL PHARMACY GROUP, INC., Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Under California Rules of Court, rules 976(b) and 976.1, the following portions of this opinion are certified for publication: the first three sentences of the Summary section on page 1633, the first four paragraphs of the Factual and Procedural Background on pages 1634 (through the end of section I), part I. of the Discussion on pages 1635–1640, and the Disposition section on page 1641.

**COUNSEL**

Moneymaker & Moneymaker and Richard M. Moneymaker for Defendants and Appellants.

SulmeyerKupetz, Alan G. Tippie and Marcus A. Tompkins for Plaintiff and Appellant and for Plaintiff and Respondent.

**OPINION**

**BOLAND, J.—**

## SUMMARY

These consolidated appeals involve an assignment for the benefit of creditors. The assignee brought three lawsuits, under Code of Civil Procedure section 1800, to avoid and recover preferential transfers. In the published portion of this opinion, we disagree with the majority opinion in *Sherwood Partners, Inc. v. Lycos, Inc.* (9th Cir. 2005) 394 F.3d 1198 (*Sherwood Partners*), and conclude that Code of Civil Procedure section 1800 is not preempted by the federal Bankruptcy Code.*

## FACTUAL AND PROCEDURAL BACKGROUND

On August 1, 2001, Carolyn's Country Pies, Inc. (Carolyn's) executed a voluntary general assignment for the benefit of creditors. (Code Civ. Proc., § 493.010.) Plaintiff David R. Haberbush (Haberbush) was the assignee. In his capacity as assignee for the benefit of Carolyn's creditors, Haberbush brought three lawsuits, under Code of Civil Procedure section 1800, to avoid

---

*See footnote, *ante*, page 1630.

and recover certain payments as preferential transfers. Haberbush obtained judgments in each of the three cases, subject to a setoff of $150,000 for sums advanced to Haberbush that were found to have accrued to the benefit of Carolyn's creditors. The defendants in each case—Charles and Dorothy Cummins Family Limited Partnership (Cummins FLP), Barry L. Vantiger (Vantiger) and Gemmel Pharmacy Group, Inc. (Gemmel)—appealed, and Haberbush cross-appealed on the setoff issue.

We summarize first the applicable legal principles. Then, in the unpublished portion of the opinion, we describe the general substance of the lawsuits Haberbush filed and the proceedings in the trial court that resulted in the judgments for Haberbush.

## I. *The Legal Principles.*

■ Under Code of Civil Procedure section 1800, the assignee of a general assignment for the benefit of creditors may recover any transfer of the property of the assignor—to whom we will refer as the debtor—under certain conditions. Transfers of the debtor's property may be recovered by the assignee if the transfer was made:

(1) to or for the benefit of a creditor;

(2) on account of an antecedent debt owed by the debtor before the transfer;

(3) while the debtor was insolvent;

(4) within 90 days before the assignment, or between 90 days and one year before the assignment if the creditor, at the time of the transfer,

(a) was an "insider," and

(b) had reasonable cause to believe the debtor was insolvent at the time of the transfer; and

(5) the transfer enables the creditor to receive more than another creditor of the same class. (Code Civ. Proc., § 1800, subd. (b).)

There are several exceptions to the assignee's power to recover transfers, such as contemporaneous exchanges for new value given to the debtor, payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee, and so on. (Code Civ. Proc., § 1800, subd. (c).)

II.–IV.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISCUSSION

I. *Code of Civil Procedure Section 1800 Is Not Preempted by the Federal Bankruptcy Code.*

After these appeals were filed, the United States Court of Appeals for the Ninth Circuit issued an opinion in *Sherwood Partners, supra,* 394 F.3d 1198. Over a dissent, the majority in *Sherwood Partners* concluded the federal Bankruptcy Code (title 11 of the United States Code) preempts the California statute giving the assignee the power to void preferential transfers. (Code Civ. Proc., § 1800.) Cummins FLP, Vantiger and Gemmel raised the issue of preemption in their brief on appeal. Because preemption is a question of subject matter jurisdiction (see *De Tomaso v. Pan American World Airways, Inc.* (1987) 43 Cal.3d 517, 520, fn. 1 [235 Cal.Rptr. 292, 733 P.2d 614]), and in this case presents a question of law not dependent upon any factual determinations, the issue is properly before this court.[16]

██ We begin with a review of the principles governing the question whether a state law has been preempted by federal law, as summarized in *Sherwood Partners.* Congress has the authority to preempt state laws. Whether it has done so in a particular case is a question of congressional intent. Congress may preempt state laws expressly, or its intent to do so may be inferred "where it is clear from the statute and surrounding circumstances that Congress intended to occupy the field, leaving no room for state regulation." (*Sherwood Partners, supra,* 394 F.3d at p. 1200.) The United States Supreme Court has observed that, while various expressions of the governing principle have been employed, the court's primary function in deciding a preemption issue is to determine whether the state's law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."[17] (*Hines v. Davidowitz* (1941) 312 U.S. 52, 67 [85 L.Ed. 581, 61 S.Ct. 399] (*Hines*); see *Sherwood Partners, supra,* 394 F.3d at pp. 1200–1201.)

---

* See footnote, *ante,* page 1630.

[16] Decisions of the lower federal courts on federal questions are persuasive but not binding on state courts. (*Walker v. Kiousis* (2001) 93 Cal.App.4th 1432, 1441 [114 Cal.Rptr.2d 69].)

[17] The Supreme Court quoted its decision in *Savage v. Jones* (1912) 225 U.S. 501, 533 [56 L.Ed. 1182, 32 S.Ct. 715]: "For when the question is whether a Federal act overrides a state law, the entire scheme of the statute must of course be considered and that which needs must be implied is of no less force than that which is expressed. If the purpose of the act cannot otherwise be accomplished—if its operation within its chosen field else must be frustrated and its provisions be refused their natural effect—the state law must yield to the regulation of Congress within the sphere of its delegated power."

According to the *Sherwood Partners* majority, the assignee's powers to avoid and recover preferential transfers cannot peaceably coexist with the federal bankruptcy scheme. The assignee's avoidance powers, the court concluded, are inconsistent with the operation of the bankruptcy system, and "trench too close" upon the exercise of the federal trustee's power to avoid preferential transfers. (*Sherwood Partners, supra,* 394 F.3d at pp. 1202, 1204–1206.) *Sherwood Partners* explains that the Bankruptcy Code embodies two goals: a fresh start for the debtor and the equitable distribution of the debtor's assets among competing creditors. Because state statutes purporting to discharge debtors from their obligations (the first goal) are preempted (e.g., *Pobreslo v. Joseph M. Boyd Co.* (1933) 287 U.S. 518, 524–525 [77 L.Ed. 469, 52 S.Ct. 262, 53 S.Ct. 262] (*Pobreslo*)), *Sherwood Partners* asserts that "state statutes that implicate the federal bankruptcy law's other major goal, namely equitable distribution," are likewise preempted. (*Sherwood Partners,* at p. 1203.) The reasoning of the *Sherwood Partners* majority is this:

—The trustee's power to avoid preferential transfers and recover the funds for distribution to creditors is exercised under the supervision of the federal courts, and the trustee is appointed by the United States Trustee or elected by the creditors, not hand-picked by the debtor (as is the assignee under state law). Federal law protects creditors from the trustee's possible conflicts of interest and other possible sources of self-dealing.

—If a state assignee under Code of Civil Procedure section 1800 recovers a preferential transfer and distributes its proceeds to creditors, a federal trustee will be precluded from recovering the same sum if a federal bankruptcy proceeding is begun. "The distribution of the recovered sum will then have been made by a state assignee subject to state procedures and substantive standards, rather than by the federal trustee subject to bankruptcy law's substantive standards and procedural protections." (*Sherwood Partners, supra,* 394 F.3d at p. 1204.)

—Once state proceedings are commenced, "they will affect the incentives of various parties as to whether they wish to avail themselves of federal bankruptcy law." (*Sherwood Partners, supra,* 394 F.3d at p. 1205.) The creditor whose transfer the assignee avoids "may have a new incentive to begin an involuntary federal proceeding; other creditors . . . may have diminished incentives" because they may share in the funds recovered by the assignee "and might therefore have no interest in invoking the potentially more expensive and time-consuming federal processes." (*Ibid.*) According to the *Sherwood Partners* majority, Congress did not contemplate "state laws that would sharpen or blunt the effect" of statutory incentives for the initiation of federal bankruptcy proceedings. (*Ibid.*)

*Sherwood Partners* thus concludes that "statutes that give state assignees . . . avoidance powers beyond those that may be exercised by individual creditors trench too close upon the exercise of the federal bankruptcy power." (*Sherwood Partners, supra,* 394 F.3d at p. 1205.)

We are constrained to disagree with the analysis in *Sherwood Partners,* as we find it impossible to conclude that Code of Civil Procedure section 1800 is inconsistent with "the essential goals and purposes of federal bankruptcy law . . . ." (*Sherwood Partners, supra,* 394 F.3d at p. 1202.)

First, it is undisputed that Congress intended, in general, to permit the coexistence of state laws governing voluntary assignments for the benefit of creditors. As *Sherwood Partners* necessarily concedes, voluntary assignments for the benefit of creditors have "a venerable common-law pedigree" (*Sherwood Partners, supra,* 394 F.3d at p. 1205, fn. 8) and were expressly upheld in *Pobreslo, supra,* 287 U.S. at page 526: "And, quite in harmony with the purposes of the federal Act, the provisions of [Wisconsin law] that are regulatory of such voluntary assignments serve to protect creditors against each other and go to assure equality of distribution . . . ." (See also *Stellwagen v. Clum* (1918) 245 U.S. 605, 615 [62 L.Ed. 507, 38 S.Ct. 215] (*Stellwagen*) [Ohio statute permitting appointment of a receiver to take charge of all assets of the debtor and administer them for the equal benefit of all creditors, in a suit by creditors seeking to void a transfer made in contemplation of insolvency and designed to prefer one or more creditors, "is not opposed to the policy of the bankruptcy law or in contravention of the rules and principles established by it with a view to the fair distribution of the assets of the insolvent"].) Indeed, the Bankruptcy Code expressly makes state law on voidable transfers available to the bankruptcy trustee.[18] (11 U.S.C. § 544(b).)

Second, *Sherwood Partners* reaches too far in suggesting that any state statute that "implicate[s]" the federal bankruptcy law's second major goal of equitable distribution is preempted.[19] (*Sherwood Partners, supra,* 394 F.3d at p. 1203.) The statutes upheld against preemption challenges in

---

[18] Section 544(b) of the Bankruptcy Code provides, in pertinent part, that "the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim . . . ." (11 U.S.C. § 544(b)(1).)

[19] *Sherwood Partners* points to the settled principle that state laws purporting to give debtors a discharge from their obligations are preempted, because giving the debtor a fresh start by discharging most of his debts is one of the two "essential goals and purposes" of federal bankruptcy law. (*Sherwood Partners, supra,* 394 F.3d at pp. 1202, 1203.) *Sherwood Partners* thereupon concludes that "[w]hat goes for state discharge provisions also holds true for state statutes that implicate the federal bankruptcy law's other major goal, namely equitable distribution." (*Id.* at p. 1203.)

*Pobreslo* and *Stellwagen* obviously implicate the federal bankruptcy law's goal of equitable distribution. Indeed, *Pobreslo* and *Stellwagen* expressly refer to that goal in upholding the state statutes. (*Pobreslo, supra,* 287 U.S. at p. 526 [state law assures "equality of distribution"]; *Stellwagen, supra,* 245 U.S. at p. 615 [state law "is not opposed to the policy of the bankruptcy law . . . with a view to the fair distribution of the assets of the insolvent"].) In short, the mere fact that a state law "implicate[s]" the Bankruptcy Code's goal of equitable distribution is not sufficient to justify the conclusion that the state law "stands as an obstacle" to that goal. (*Hines, supra,* 312 U.S. at p. 67.)

 Third, the *Sherwood Partners* conclusion that Code of Civil Procedure section 1800 is preempted rests, in essence, on a two points: (1) the fact that section 1800 gives the assignee powers beyond those that may be exercised by individual unsecured creditors; and (2) the proposition that the assignee's powers to avoid preferential transfers will "affect the incentives of various parties as to whether they wish to avail themselves of federal bankruptcy law[,]" thereby interfering with the code's goal of equitable distribution of a debtor's assets.[20] (*Sherwood Partners, supra,* 394 F.3d at p. 1205.) However:

—As Judge Nelson points out in her dissent, "[s]tate voluntary assignments, by definition, give the assignee more power than may be exercised by an individual creditor."[21] (*Sherwood Partners, supra,* 394 F.3d at p. 1206 (dis. opn. of Nelson, J.).) The majority's reliance on this distinction thus would cast doubt on the validity of all voluntary assignment statutes, not merely those allowing the assignee to avoid preferential transfers. Yet Supreme Court precedents clearly reject the notion that voluntary assignments

---

[20] The *Sherwood Partners* majority observed that a creditor faced with a debtor's state assignment for the benefit of creditors "may not be able to run to federal court . . . ." (*Sherwood Partners, supra,* 394 F.3d at p. 1205.) This is because in most cases three creditors are required to force the debtor into bankruptcy. Further: "[T]he action of the state assignee may diminish the likelihood that [the creditor] will be able to obtain the consent of other creditors. After all, if the state assignee succeeds in recovering the preferential transfer under state law, the other creditors may share in that bounty and might therefore have no interest in invoking the potentially more expensive and time-consuming federal processes." (*Ibid.*) *Sherwood Partners* thus rejected the argument that a creditor can prevent action by the state assignee by filing an involuntary federal bankruptcy petition, which would have the effect of preempting the state proceedings. However, the Supreme Court in *Pobreslo, supra,* 287 U.S. at page 526, specifically adopted that very argument, observing that, because proceedings under state voluntary assignment law "may be terminated upon petition of creditors filed . . . [as] prescribed by the federal Act," such voluntary assignments "should be regarded as not inconsistent with the purposes of the federal Act." (*Ibid.*)

[21] As Judge Nelson observes: "The state assignee, regardless of the powers granted by section 1800, distributes a debtor's assets among creditors and otherwise exercises powers on behalf of all creditors, thus exercising powers greater than any one creditor could exercise." (*Sherwood Partners, supra,* 394 F.3d at p. 1206, fn. 1 (dis. opn. of Nelson, J.).)

generally are incompatible with federal bankruptcy law. (*Pobreslo*, *supra*, 287 U.S. at p. 526; *Stellwagen*, *supra*, 245 U.S. at p. 615.)

—As for the alteration of incentives to use federal bankruptcy law, we do not doubt that incentives may be affected by the existence of an alternative to formal bankruptcy proceedings—particularly an alternative that may be less "expensive and time-consuming . . . ." (*Sherwood Partners*, *supra*, 394 F.3d at p. 1205.) Again, however, incentives to use bankruptcy law may be affected by any voluntary assignment laws, whether or not the assignee has the power to avoid preferential transfers. The only pertinent question is whether the state statute's effect on those incentives somehow interferes with or is an obstacle to the Bankruptcy Code's objective of equitable distribution. In our view, the *Sherwood Partners* majority provides no cogent explanation of how the assignee's avoidance powers conflict with that objective. As Judge Nelson correctly observed, because the common law right to make an assignment of property for the benefit of creditors is well established, it is "illogical that state laws that provide a forum for the equitable distribution of that property should be preempted by federal bankruptcy law." (*Sherwood Partners*, *supra*, 394 F.3d at p. 1207 (dis. opn. of Nelson, J.).)

Fourth, the *Sherwood Partners* majority correctly points out that if a preferential transfer is recovered by the assignee, the same sum could not be recovered if a federal bankruptcy proceeding were filed.[22] However, as Judge Nelson observes: "But California's preference recovery provision is, by design, virtually identical to the bankruptcy code's preferential transfer statute. [Citations.] If the same transfer can be avoided in both the state and federal systems, how does the state system interfere with bankruptcy's goal

---

[22] According to the *Sherwood Partners* majority, "[t]his is not a matter for federal concern when the assignee has no special avoidance rights." (*Sherwood Partners*, *supra*, 394 F.3d at p. 1204, fn. 6.) The majority observes that if individual unsecured creditors can sue to recover preferences under state law, the same powers are available to a bankruptcy trustee under 11 U.S.C. section 544(b), and "there is obviously no conflict then between federal law and state law giving those powers to an assignee." (*Sherwood Partners*, at p. 1204, fn. 6.) That is plainly so, because section 544(b) of the Bankruptcy Code gives the trustee the power to avoid any transfer voidable under state law by an unsecured creditor. However, we fail to discern why a conflict between federal and state law arises simply because the assignee has powers that individual unsecured creditors do not have. After all, the bankruptcy trustee can avoid preferential transfers under section 547(b), as well as under section 544(b), so the assignee does not have powers not available to the trustee. We find unconvincing the distinction *Sherwood Partners* draws between a state assignment scheme where only the assignee has avoidance powers and an assignment scheme in which individual unsecured creditors also have those powers. In either case, if the assignee or the individual creditor recovers the transfer and distributes its proceeds under state law, the federal trustee will not be able to do so. In neither case does the state law stand as an obstacle to the federal goal of equitable distribution.

of equitable distribution? Both the state and federal statutes serve to ensure equality of distribution and to deter the race to recover assets before insolvency. [Citations.] That California's voluntary assignment system has such a provision makes it more capable of effectuating the equality of distribution that is the aim of the bankruptcy law; it does not necessarily interfere with bankruptcy's goal of achieving equal distribution." (*Sherwood Partners, supra,* 394 F.3d at pp. 1207–1208 (dis. opn. of Nelson, J.).)

Finally, as Judge Nelson also pointed out, federal regulation should not be deemed preemptive of state regulatory power absent " 'persuasive reasons— either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakably so ordained.' " (*Sherwood Partners, supra,* 394 F.3d at p. 1208 (dis. opn. of Nelson, J.), quoting *Florida Lime & Avocado Growers, Inc. v. Paul* (1963) 373 U.S. 132, 142 [10 L.Ed.2d 248, 83 S.Ct. 1210].) This is not such a case. Voluntary assignments and the bankruptcy system have coexisted since the inception of bankruptcy law, and state laws regulating the rights and obligations of debtors or their assignees and creditors are often expressly incorporated in bankruptcy law. (*Sherwood Partners,* at p. 1201 [citing examples].) Congress has not indicated that voluntary assignments generally or preferential transfer avoidance laws specifically are to be preempted. (*Id.* at p. 1208 (dis. opn. of Nelson, J.).) Under these circumstances, we can discern no persuasive reason to conclude that California's "less stigmatic, and less costly, voluntary assignment scheme" (*ibid.*)—which, like the federal bankruptcy system, serves to ensure equality of distribution of a debtor's assets—"stands as an obstacle to the accomplishment . . . of the full purposes and objectives" of the federal bankruptcy system. (*Hines, supra,* 312 U.S. at p. 67.)

█ Accordingly, we conclude Code of Civil Procedure section 1800 is not preempted by the Bankruptcy Code.

II. *The Judgments Must Be Reversed and the Causes Remanded for Further Proceedings Because Evidence Necessary for Haberbush's Prima Facie Case Was Presented in a Manner Unauthorized by Statute or Court Rules.*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[*]See foonote, *ante,* page 1630.

## DISPOSITION

The judgments are reversed, and the causes are remanded to the trial court with directions to vacate the judgments and conduct further proceedings consistent with the views expressed in this opinion. The appellants are to recover their costs on appeal.

Rubin, Acting P. J., and Flier, J., concurred.

The petition of appellants Charles and Dorothy Cummins Family Limited Partnership and Gemmel Pharmacy Group, Inc., for review by the Supreme Court was denied August 30, 2006, S144977.