Filed 9/3/14  Friedman Marketing v. South Coast Air Qual. Mgmt. Dist. CA2/7
**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| FRIEDMAN MARKETING CORPORATION, et al., | B249836 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC495521) |
| v. | |
| SOUTH COAST AIR QUALITY MANAGEMENT DISTRICT, et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Holly E. Kendig, Judge.  Affirmed.

Law Office of Robert G. Klein and Robert G. Klein, for Plaintiffs and Appellants.

South Coast Air Quality Management District, Kurt R. Wiese, Barbara Baird and William B. Wong, for Defendants and Respondents.

————————————————

Plaintiff Friedman Marketing Corporation filed an action seeking a declaration that it was not required to comply with regulations governing the sale of components used in gasoline vapor recovery systems. Friedman asserted its products were exempt from the regulations because they consisted of "replacement sub-parts," rather than components. Defendant South Coast Air Quality Management District demurred, arguing that Friedman had failed to exhaust its administrative remedies and that the claim was barred by collateral estoppel. The trial court sustained the demurrer without leave to amend. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Summary of Regulations Governing the Sale of Gasoline Vapor Control Systems*

California law prohibits the sale or installation of any "new or rebuilt gasoline vapor control system, or any component of the system, unless the system or component has been certified by [the California Air Resources Board (CARB)] and is clearly identified by a permanent identification of the certified manufacturer or rebuilder." (Health & Safety Code, § 41954, subd. (f).) CARB's certification procedures and requirements are set forth in CARB document "CP-201." (See Cal. Code. Regs., tit. 17, § 94011 ["The certification of gasoline vapor recovery systems at [gasoline] dispensing facilities (service stations) shall be accomplished in accordance with the Air Resources Board's CP-201"].[1])

Section 1 of CP-201 requires certification of "all complete [gasoline vapor recovery] systems and . . . all associated dispensers, piping, nozzles, couplers, processing units . . . and any other equipment or components necessary for the control of gasoline vapors during . . . refueling operations at [gasoline dispensing facilities]." The document

---

[1] CARB adopted Cal. Code. Regs., tit. 17, § 94011 and CP-201 pursuant to Health and Safety Code section 41654, subdivision (a), which directs CARB to establish "procedures for determining the compliance of any system designed for the control of gasoline vapor emissions during gasoline marketing operations . . . with performance standards that are reasonable and necessary to achieve or maintain any applicable ambient air quality standard."

includes detailed provisions describing the testing and performance requirements that must be satisfied in order to obtain certification.

CP-201 also includes provisions governing requests for amendments to a previously certified vapor recovery system or component. Section 18 states, in relevant part: "Requests for alternate or replacement components, equipment reconfigurations, or software changes will be subjected to [a CARB] engineering evaluation . . . to determine the level of testing required." Based on the results of its evaluation, CARB "may require full operational testing . . . [or] allow abbreviated and/or limited operational testing." CARB may also approve a component modification without any testing if it determines the modification will have no effect on "the performance of the vapor recovery system."

Section 16.7 sets forth labeling requirements applicable to vapor recovery systems: "All components for vapor recovery systems shall be permanently identified with the manufacturer's name, part number, and a unique serial number. This requirement does not apply to replacement sub-parts of the primary component. Specific components may be exempted from this requirement if [CARB] determines, in writing, that this is not feasible or appropriate."

### B. Friedman's Petition for Writ of Mandate Against CARB

#### 1. Summary of petition for writ of mandate

On December March 10, 2011, plaintiff Friedman Marketing Corporation, doing business as "EZ Flo," filed a petition for writ of mandate seeking an order requiring CARB to certify an EZ Flo "front end kit" that included replacement for gasoline dispenser nozzles manufactured by third parties. The petition asserted CARB was required to certify the front end kit, which consisted of a "spout, boot and face seal," because Friedman had demonstrated each replacement part had no "effect [on the] performance of the vapor recovery system."

Alternatively, Friedman's petition asserted the EZ Flo front end kit did not require CARB certification because it qualified as a "replacement sub-part" rather than a "primary component" of a vapor recovery system. The petition alleged the language of

3

CP-201, section 16.7, which pertains to vapor system labeling requirements, clarified that "replacement sub-parts" were not intended to be subject to the same testing or certification requirements as "primary components." Friedman also argued it was not required to obtain certification because CARB had permitted Friedman's competitors to sell replacement part kits without going through the certification process.

In its opposition, CARB argued the court should deny the petition because Friedman had never submitted an application for certification of its EZ Flo front end kit. CARB contended it could not be found to have "refused to certify EZ Flo's products . . . without an application." CARB also disagreed with Friedman's assertion that the EZ Flo front end kit was exempt from the certification procedures set forth in CP-201. CARB asserted the governing statutes and regulations made clear that every part of a vapor recovery system, including replacement parts and original components, must be certified prior to sale. CARB explained that exempting replacement parts from these statutes and regulations would effectively permit "manufacturers of [replacement] parts to diminish the vapor recovery capacity of vapor recovery systems that initially met vapor recovery legal requirements . . . . The only way to ensure that the nozzle with a different manufacturer's parts . . . are reducing vapor emissions . . . is to put them through testing [and certification]."

CARB also argued that section 16.7 of CP-201 did not exclude "replacement sub-parts" from the certification process. According to CARB, the language of section 16.7 made clear that replacement sub-parts were only exempt from labeling requirements applicable to "primary components" of the vapor system.

*2. The trial court's order denying the petition for writ of mandate*

In January of 2012, the trial court entered an order denying the petition for writ of mandate. The court concluded Friedman was not entitled to a writ compelling certification of the EZ Flo front end kit because it failed to exhaust its administrative remedies. The court explained that "[u]ntil EZ Flo files an application, CARB cannot determine whether EZ Flo products meet [the applicable] standards." The court also

4

addressed and rejected Friedman's alternative contention that "its replacement front end kits need not be certified" because section 16.7 exempts "'replacement sub-parts' . . . [from CARB] testing [requirements]." The court found that "CP-201 requires that any component of a system be certified. . . . EZ Flo's front end kits . . . have not been certified and could cause significant pollution from otherwise effective [vapor retention] systems. . . . [¶] . . . CP-201 section 16.7.1 merely provides that 'replacement sub-parts of the primary component' are not required to be permanently identified with the manufacturer's information. Even if the front end kits qualify as replacement sub-parts for identification purposes, that has no bearing on the obligation for certification and testing."

On February 8, 2012, the court entered a judgment denying the petition for writ of mandate. Friedman did not file an appeal.

### C. *Friedman's Current Declaratory Relief Action Against the South Coast Air Quality Management District*

In November of 2012, Friedman filed this declaratory relief action against South Coast Air Quality Management District (the District), which the complaint describes as the "air pollution control agency for all of Orange County and the urban portions of Los Angeles . . . ." Friedman's complaint alleged the District had been issuing citations to Friedman customers who had installed EZ Flo "front end kits" onto third-party gasoline nozzles. According to the complaint, the District's citations stated that the EZ Flo front end kit had not been "certified" and lacked proper labeling, including the "manufacturer's name, part number, and unique serial numbers." Friedman alleged these citations were improper because the EZ Flo front end kit qualified as a "replacement sub-part" and was therefore exempt from certification or labeling. Friedman further asserted the District had engaged in "disparate treatment in the enforcement of [its] regulations" by allowing Friedman's competitors to sell uncertified and "unmarked" replacement sub-parts.

In its prayer for relief, Friedman requested a judgment declaring, among other things, that: (1)"The replacement sub-parts EZ Flo sells that resulted in its customers

5

being cited by [the District] . . . are replacement sub-parts that do not require CARB certification . . ."; (2) "[The District] is issuing improper citations claiming the EZ Flo replacement sub-parts require markings consisting of manufacturer's logos and serial numbers, when the CARB regulations do not require markings on replacement sub-parts"; and (3) "[The District's] actions is [*sic*] violating EZ Flo's civil rights in that the ordinance upon which [the District] issued violations to EZ Flo's customers is . . . being enforced selectively with disparate treatment."

The District filed a demurrer arguing that Friedman was barred from pursing its claim because it had never sought a determination from CARB that the EZ Flo front end kit was "exempt" from certification and labeling requirements. Alternatively, the District argued Friedman's declaratory relief claim was precluded under collateral estoppel. The District asserted that "the linchpin to [Friedman's] complaint . . . is its allegation that 'CARB regulations classify [the EZ Flo front end kit] as replacement sub-parts not requiring certification.'" The District contended this same argument had been presented and rejected in Friedman's prior writ proceeding against CARB. The District also argued the court should dismiss the complaint because: (1) Friedman's current claims were barred by "inconsistent prior statements and positions" it had made or taken in the writ proceeding; and (2) CARB was an indispensible party and had not been named as a defendant.

In its opposition, Friedman argued the exhaustion doctrine was inapplicable because, unlike the writ proceeding, it was not seeking an order certifying the EZ Flo front end kit. Instead, Friedman was seeking a judicial declaration that it did not have to obtain certification prior to selling the front end kit. Friedman also argued its claim was not barred under collateral estoppel because the order and judgment in the writ proceeding did not "reach the merits of the certification issue." According to Friedman, the trial court in the writ proceeding had merely found that Friedman was required to "file a proper application" with CARB before seeking an order compelling CARB to certify the EZ Flo front end kit.

6

The trial court sustained the demurrer without leave to amend, explaining: "[The complaint] does not state facts sufficient to constitute a cause of action because 1) [Friedman] failed to exhaust its administrative remedies, and 2) [Friedman] did not oppose one ground of [the District's] demurrer based on [Friedman's] prior inconsistent statements, positions, and judicial admissions. . . All other grounds for demurrer raised by [the District] are rendered moot." Friedman filed a timely appeal.

## DISCUSSION

### A. *Standard of Review*

"The standard of review on appeal following the sustaining of a demurrer is de novo. [Citation.] 'In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.]' [Citations.]" (*Hervey v. Mercury Casualty Co*. (2010) 185 Cal.App.4th 954, 960.)

### B. *The Trial Court Did Not Err in Sustaining the Demurrer*

#### 1. *Friedman is collaterally estopped from pursuing claims alleging the EZ Flo front end kit is exempt from CARB certification requirements*

Friedman argues the trial court erred in dismissing the portion of its declaratory relief claim seeking a judgment that the EZ Flo "front end kit" consisted of "replacement sub-parts" and therefore did not require CARB certification. Friedman contends that, contrary to the trial court's findings, it did not fail to exhaust its administrative remedies because the basis of its claim is that the EZ Flo front end kit does not require CARB certification. The District, however, contends that regardless of whether the exhaustion doctrine applies, we should affirm the trial court's ruling based on collateral estoppel. (See generally *Las Lomas Land Co., LLC v. City of Los Angeles* (2009) 177 Cal.App.4th

7

837, 848 [reviewing court "affirm[s] the judgment if it is correct on any ground stated in the demurrer, regardless of the trial court's stated reasons. [Citation.]"].)

The doctrine of collateral estoppel, also referred to as "issue preclusion," is "one aspect of the concept of res judicata." (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341, fn. 3 (*Lucido*).) "Collateral estoppel precludes relitigation of issues argued and decided in prior proceedings. [Citation.] Traditionally, we have applied the doctrine only if several threshold requirements are fulfilled. First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding. [Citations]." (*Ibid.*)

All of those elements are present here. First, the writ proceeding and the current action involve "identical factual allegations." (See *Lucido, supra*, 51 Cal.3d at p. 342 ["The 'identical issue' requirement addresses whether 'identical factual allegations' are at stake in the two proceedings"].) Friedman's writ petition asserted, in part, that it was not required to obtain certification of the same EZ Flo "front end kit" that is at issue in this action. Moreover, as in this case, Friedman's writ petition argued certification was unnecessary because: (1) the EZ Flo front end kit consisted of "replacement sub-parts," rather than components; and (2) CP-201, section 16.7 demonstrates that replacement sub-parts do not require certification.

Second, the certification issue was "actually litigated" in the writ proceeding. As explained above, Friedman's writ petition asserted the EZ Flo front end kit did not require CARB certification because it was comprised of "replacement sub-parts" rather than components. CARB opposed this argument, asserting that the governing statutes and regulations required the certification of all parts related to a vapor recovery system, including "replacement sub-parts." CARB further contended that the section of CP-201 Friedman had relied on—section 16.7—did not relate to certification; it merely provided

8

that replacement sub-parts were exempt from labeling requirements applicable to primary components. The court's order denying the writ addressed and decided the issue, concluding that the relevant statutes and regulations did require the testing of certification of replacement sub-parts and that section 16.7 was not relevant to the issue of certification.

Third, the certification issue was "necessarily decided" in the writ proceeding. This element "require[s] only that the issue not have been 'entirely unnecessary' to the judgment in the initial proceeding." (See *Lucido, supra*, 51 Cal.3d at p. 342.) In the writ proceeding, CARB initially argued Friedman was not entitled to an order compelling certification of the EZ Flo front end kit because Friedman had never applied for certification. In response, Friedman argued it had no duty to seek certification because its front end kit was not subject to the certification requirements. The court, in turn, ruled that: (1) Friedman had failed demonstrate the EZ Flo front end kit was exempt from certification; and (2) as a result, Friedman was required to apply for certification before seeking a writ of mandate ordering certification. Thus, the court's ruling that the EZ Flo front end kit required certification was necessary to resolve the writ proceeding.

Finally, Friedman has never contested that it was a party to the writ proceeding (it was the petitioner) or that the proceeding resulted in a final judgment on the merits. (See generally *Goddard v. Security Title Ins. & Guar. Co.* (1939) 14 Cal.2d 47, 52 [an order of dismissal "is a judgment on the merits to the extent that it adjudicates that the facts alleged do not constitute a cause of action"].) Accordingly, Friedman is collaterally estopped from raising any claim related to whether the EZ Flo front end kit is subject to CARB certification requirements.[2]

---

[2] Although the District raised the issue of collateral estoppel in its respondent's brief, Friedman elected not to file a reply brief. Friedman has therefore presented no argument explaining why collateral estoppel is inapplicable under the circumstances presented here.

## 2. *Friedman has failed to state an equal protection claim*

Friedman also argues the trial court erred in dismissing the portion of its claim seeking a declaration that the District is violating its "civil rights" by "selectively enforcing" the CARB regulations against EZ Flo products. Friedman contends its allegation that the District does not require competitors to certify or label "replacement sub-parts" that are similar to the EZ Flo front end kit adequately states an "equal protection" claim.

The language of Friedman's complaint does not actually allege that the District's selective enforcement of CARB's certification and labeling requirements violates the equal protection clause. Indeed, the phrase "equal protection" does not even appear in the complaint. Instead, the complaint alleges that the District's failure to enforce CARB's requirements against Friedman's competitors "supports [Friedman's] claim that non-[CARB] certified replacement seals are permitted under the regulations." The complaint further alleges that the District's attempt to enforce inapplicable CARB regulations against Friedman's customers violates Friedman's "civil rights." Thus, rather than stating an equal protection claim predicated on selective enforcement or disparate treatment, the complaint merely cites the District's failure to enforce certification requirements against other producers of replacement parts as evidence supporting Friedman's contention that certification of such parts is not required. As explained above, however, any claims regarding certification are precluded under collateral estoppel.

Even if we assume Friedman's complaint does attempt to assert an equal protection claim predicated on selective enforcement, the allegations are insufficient. "'Unequal treatment which results simply from laxity of enforcement or which reflects a nonarbitrary basis for selective enforcement of a statute does not deny equal protection and is not constitutionally prohibited discriminatory enforcement.' [Citation.] Unequal application of a statute or rule to persons entitled to be treated alike is not a denial of equal protection 'unless there is shown to be present in it an element of intentional or purposeful discrimination.' [Citation.]" (*Cilderman v. City of Los Angeles* (1998) 67

Cal.App.4th 1466, 1470.) As stated by our Supreme Court: "[A]n equal protection violation does not arise whenever officials 'prosecute one and not [another] for the same act;' instead, the equal protection guarantee simply prohibits prosecuting officials from purposefully and intentionally singling out individuals for disparate treatment on an invidiously discriminatory basis." (*Murgia v. Municipal Court* (1975) 15 Cal.3d 286, 296.)

Thus, to state an equal treatment claim predicated on selective enforcement, a complaint must allege "facts from which it might be concluded the asserted unequal treatment was the result of intentional discriminatory conduct, as opposed to mere laxity of enforcement." (*Golden Gate Water Ski Club v. County of Contra Costa* (2008) 165 Cal.App.4th 249, 268.) Friedman's complaint includes no such allegations. Instead, the complaint alleges only that the District has "allowed" Friedman's competitors to use "unmarked" and uncertified "replacement sub-parts."

### 3. *Friedman has failed to demonstrate the trial court erred in dismissing its labeling claim*

Finally, Friedman argues the trial court erred in dismissing the portion of its claim seeking a declaration that the District had been issuing improper citations "for purchasing [EZ Flo] sub-parts [that lacked] the manufacturer's name, part number, and unique serial number." Friedman contends the EZ Flo front end kit is exempt from these labeling requirements because: (1) the front end kit consist of "replacement sub-parts"; and (2) CP-201, section 16.7.1 states that "replacement sub-parts" do not need to be labeled with the manufacturer's name, part number, and unique serial number.

Friedman, however, has failed to address the reason for dismissal set forth in the trial court's order: failure to exhaust administrative remedies.[3] "[I]t is settled that[] '[a]

---

[3]     Although the court's order references the "exhaustion" doctrine, its ruling appears to apply principles of "primary jurisdiction." The California Supreme Court has explained that "courts have often confused the two closely related concepts. [Citation.] 'Both are essentially doctrines of comity between courts and agencies. They are two sides of the timing coin: Each determines whether an action may be brought in a court or

11

judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown." (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [emphasis in original].) As a result, the appellant has a "burden . . . to affirmatively demonstrate [the trial court committed] error." (*People v. White Eagle* (1996) 48 Cal.App.4th 1511, 1523.) "This burden requires more than a mere assertion that the judgment is wrong. . . . It is not our place to construct theories or arguments to undermine the judgment and defeat the presumption of correctness." (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852.)

In this case, the trial court's judgment states that it sustained the demurrer to Friedman's declaratory relief claim for failure to exhaust administrative remedies. Applying the presumptions above, we must assume the trial court intended this reasoning to apply to the portion of Friedman's claim regarding labeling requirements. Friedman has no presented no argument why the court erred in concluding Friedman was required to present its grievance to the District before seeking a judicial declaration preventing the

---

whether an agency proceeding, or further agency proceeding, is necessary.' . . . "'Exhaustion" applies where a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course. "Primary jurisdiction," on the other hand, applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.' [Citation.]" (*Farmers Ins. Exchange v. Superior Court* (1992) 2 Cal.4th 377, 390-391.) The trial court appears to have concluded that even if Friedman's labeling claim was "cognizable in the courts" (*id*. at p. 390), the claim nonetheless should have originated with the agency responsible for administering the regulatory framework governing gasoline vapor control systems. Whether the court's ruling is properly framed as addressing "exhaustion" or "primary jurisdiction," Friedman has presented no argument explaining why the court erred.

District from issuing citations based on the use of non-labeled EZ Flo front end kits.

Accordingly, it has failed to overcome the presumption of correctness.**4**

## DISPOSITION

The judgment is affirmed.  Respondents shall recover their costs on appeal.

ZELON, J.

We concur:

PERLUSS, P. J.

SEGAL, J.*

---

**4**    When, as here, a demurrer has been sustained without leave to amend, we generally review the decision to deny amendment to determine if "there is a reasonable possibility that the defect can be cured by amendment." (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865.)  Plaintiff has the burden "'of proving that an amendment would cure the defect.'  [Citation.]" (*Arce v. Children's Hospital Los Angeles* (2012) 211 Cal.App.4th 1455, 1497, fn. 19.)  Friedman has not argued the trial court erred in denying leave to amend the complaint nor has it offered any proposed amendment to its complaint.  Accordingly, we find no abuse of discretion by the trial court in sustaining the demurrer without leave to amend.  (*Ibid*. [affirming trial court's sustaining of demurrer without leave to amend where plaintiff did "not offer[] any proposed amendment"].)

*    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

13